[Civ. No. 21631. Second Dist., Div. Three. June 21, 1957.]

JULIUS GOREN et al., Respondents, v. T. L. GRIFFIN et al., Appellants.

Bailie, Turner, Lake & Sprague and Richard W. Sprague for Appellants.

Samuel B. Steinbach and Robert R. Schaefer for Respondents.

WOOD (Parker), J.—Plaintiffs sought damages by reason of alleged fraud in the exchange of real property. The complaint also contained a cause of action for declaratory relief.

In a nonjury trial, judgment was for plaintiffs for $30,000. Defendants Griffin appeal.

Appellants contend that the court erred: (1) in excluding certain testimony offered by them on the subject of damages; (2) in permitting plaintiffs to amend the complaint to conform to proof—by alleging a cause of action for reformation of escrow instructions; and (3) in denying defendants an opportunity, after such amendment, to present further evidence on the issues presented by the amendment.

Plaintiffs (Julius Goren and Nettie Goren, husband and wife; and Osias Goren and Dorothy Goren, husband and wife) were owners of an orange grove near Lindsay, California. Defendants T. L. Griffin and Jean F. Griffin (husband and wife) were owners of a motel in Riverside. On April 28, 1949, plaintiffs Julius Goren and Osias Goren (father and son) and defendant Mr. Griffin signed escrow instructions for the exchange of said properties and certain personal property. The escrow instructions provided, in part, that the ranch would be conveyed to defendant Mrs. Griffin free of encumbrances, and that the property referred to as the motel would be conveyed to plaintiffs subject to an existing encumbrance of $16,200 and a second trust deed of $30,000 to be executed in favor of Mrs. Griffin. The instructions provided that plaintiffs would deliver into escrow a bill of sale for certain personal property which was at the ranch; and that defendant Mr. Griffin would deliver into escrow a bill of sale for certain personal property which was at the motel. The escrow was closed in May, 1949, and plaintiffs took possession of the motel, and Mrs. Griffin took possession of the ranch.

The motel, known as the Wagon Wheel Motel and consisting of 71 units, was on a rectangular parcel of land which according to a statement at the bottom of the escrow instructions was approximately 500 feet in length and 396 feet in width.

The south boundary of the land, about 512 feet in length, was Magnolia Boulevard. The east boundary was a hedge fence. When plaintiffs acquired the property they believed that the west boundary was a wooden fence, which extended about 396 feet along Tyler Avenue. The fact was that the west boundary was about 21 feet east of the fence. In other words, a strip of land about 21 feet wide and 396 feet long, which plaintiffs believed at the time of the transaction was a part of the motel property, was not a part of the property. The strip of land was owned by the city of Riverside. A substantial part of the main building of the motel was on the

strip. (That part of the building was approximately 7 feet by 200 feet.)

The legal description of the motel property, as written in the escrow instructions, was a correct description of the property owned by defendants Griffin, that is, the description did not include the strip of land owned by the city. Defendants Griffin had obtained the motel, under a trust deed foreclosure, about five months before the time the Griffins exchanged the motel for plaintiffs' ranch. When the Griffins entered into the escrow with plaintiffs they described the motel property in the escrow instructions in the same manner as the property was described in the trustee's deed under which they acquired the property.

In June, 1951 (about two years after the exchange), the city of Riverside installed light poles on the strip of land above referred to. In July, 1951, plaintiffs caused a survey to be made of the motel property. The survey showed that the strip of land was not a part of the motel property, as legally described in the escrow instructions. Plaintiffs thereupon informed Mr. Griffin regarding the survey and gave him a copy of the survey record.

This action was commenced October 28, 1952. There were four alleged causes of action in the complaint. In the first cause of action it was alleged, among other things, that defendants orally represented to plaintiffs that the southern boundary of the motel property was 542 feet in length, the western boundary was 400 feet in width, and that all the motel buildings were within the rectangular area of those dimensions; plaintiffs relied upon the representations; the representations were false and unwarranted, or should have been known by defendants to be false and unwarranted, in that, the southern boundary was only 511.67 feet in length and the westerly portion of the land, 21 feet along the southern boundary line and 400 feet in depth which purportedly had been conveyed to plaintiffs, was not owned by defendants but was owned by the city of Riverside; plaintiffs did not know the true facts pertaining to the dimensions of the motel property until 1951 when employees of the city erected power lines; thereafter plaintiffs caused a survey to be made and the survey showed that the westerly strip of land, 21 feet wide, belonged to the city and that the motel buildings encroached upon the strip; that plaintiffs must vacate the strip of land and remove the buildings therefrom; plaintiffs have been damaged in the amount of $50,000; by reason of the substantial

investment of money, time and labor in said property by plaintiffs, a rescission of the transaction would not adequately compensate plaintiffs for the damage sustained and therefore the action is for damages and not for rescission.

The second cause of action alleged that defendants were negligent in inducing plaintiffs to believe the said representations.

The third cause of action alleged that about April 28, 1949, it was orally agreed "between defendants" that the property to be conveyed by defendants to plaintiffs included all the land and the buildings which were within the said rectangular area, the southern boundary of which was 542 feet in length and western boundary of which was 400 feet in length; and the consideration paid by plaintiffs was based upon the inclusion of said westerly strip of land and the buildings in "defendants' conveyance" to plaintiffs; defendants breached their agreement in that their conveyance did not include said property; by reason thereof plaintiffs have sustained damage in the amount of $50,000, being the value of the property not conveyed to plaintiffs.

The fourth cause of action alleged that a controversy exists between plaintiffs and defendants Griffin with respect to the rights and liabilities of the parties in connection with the exchange agreement and the deed of conveyance, in that, defendants assert that plaintiffs are not entitled to be compensated or entitled to any relief by reason of the exclusion of said property from said deed, upon the ground that the property was not owned by defendants Griffin but was owned by the city of Riverside.

Defendants Griffin filed two answers. One was a general denial of all allegations of the complaint. The other answer admitted the allegations that there had been an exchange of properties, but denied there was any fraud or damage, and alleged that at the time of the transaction plaintiffs knew the dimensions of the motel. It was also alleged therein that the complaint did not state facts sufficient to constitute a cause of action, and that the alleged causes of action were barred by the statute of limitations. It was also alleged that the first and second causes of action were barred by laches, in that, the alleged representations were made prior to May 28, 1948, and the complaint was filed October 28, 1952, and no reasons were alleged for failure to discover the falsity of the representations before 1951.

At the time of filing the second answer, the defendants

Griffin filed a cross-complaint wherein George and Margaret Rose were cross-defendants. It was alleged therein that on December 14, 1946, Mr. and Mrs. Rose sold the motel to third parties and took from the third parties a note for $43,000, secured by a trust deed on the motel; on April 28, 1948, the Griffins entered into negotiations with the Roses for the purchase of the note and trust deed, and that the Roses then orally represented to the Griffins that the motel comprised a rectangular area, the southerly boundary of which was 542 feet in length, and the westerly boundary was 400 feet in length and all the buildings were within that area of those dimensions; that the Griffins relied upon the representations and were induced thereby to purchase the note and trust deed; on November 9, 1948, at the trustee's sale which was held pursuant to provisions of the trust deed, the Griffins purchased the motel for $42,682.26; on May 28, 1949, the Griffins conveyed the motel to plaintiffs Goren. It was also alleged therein that the representations of cross-defendants Rose were false and were known by them, or should have been known by them, to be false, in that, the southerly boundary was not 542 feet in length but was only 511.67 feet in length, and the westerly portion of the property comprising a strip of land approximately 21 feet in width was not on December 14, 1946, or at any time, owned by the Roses but was owned by the city of Riverside; the Griffins did not know or discover the true facts pertaining to the property until 1951; on October 28, 1952, plaintiffs Goren filed an action (the present action) against the Griffins for damages arising out of the sale of the motel and out of the encroachment of the motel buildings onto the property of the city; by reason of the fraudulent representations of the Roses, the Griffins are required to defend said action and spend large sums of money in defense thereof to the damage of the Griffins in the amount of $10,000, and if the Gorens prevail in their action the Griffins will be required to pay damages to them. The second, third and fourth causes of action of the cross-complaint were in substance the same, with reference to the Griffins' purchase of the trust deed, as the second, third and fourth causes of action of the complaint were with reference to the Gorens' purchase of the motel.

In January, 1954 (about 11 months before the trial), plaintiffs Goren amended their fourth cause of action to read that it was the intention and agreement of the parties (the Griffins and Gorens), as mutually expressed by them, that

the real property and the deed were to include said westerly 21-foot strip of land, together with the buildings thereon; the deed did not include said strip, and the strip was the property of the city of Riverside; plaintiffs must vacate the strip and remove the buildings from it at a cost of $40,000; a controversy exists as to the rights and liabilities of the parties arising in connection with the exchange, in that, defendants assert that plaintiffs are not entitled to be compensated or entitled to any relief by reason of the exclusion of said property from said deed, upon the ground that said property was not owned by the defendants Griffin but was owned by the city. By said amendment, the prayer of the complaint was amended to include a prayer for reformation of the contract.

Near the beginning of the trial, the second cause of action (alleging negligent representation) and the cross-complaint were dismissed upon stipulation.

Upon stipulation, the issue of liability was tried first.

Mr. Drannon, a real estate broker, testified that plaintiffs listed their orange grove with him for sale or exchange; prior to negotiations with Mr. Griffin, the witness (Drannon) and plaintiffs Julius and Osias Goren stopped in front of the motel, and Drannon entered the motel and talked with the manager; during that time the two Gorens remained in the automobile; the manager said that Mr. Griffin owned the motel, and that he (manager) was not authorized to give any information regarding the property; a few days thereafter, Drannon went to Griffin's real estate office in Los Angeles and talked to him regarding an exchange of the orange grove for the motel; Griffin said he was not interested; on the way out of the office, Drannon talked with Mr. Greiner, a real estate salesman, who told him that there might be a chance to make the exchange; at that time Greiner gave him a sketch of the motel property; the sketch, received in evidence as Exhibit 5, looks like the sketch that Greiner gave to him; thereafter Drannon took Julius and Osias Goren to the motel and showed the motel to them, and they used the sketch as a guide in determining the boundary of the property; the manager went with them when they looked through several of the motel units; after that visit to the motel, Drannon gave the sketch to Greiner; the next time Drannon saw the sketch it was at the office of plaintiffs' counsel; thereafter the exchange was made; Drannon, Julius Goren, and Griffin were

present when the escrow instructions were being prepared; Drannon did not see the sketch at the escrow.

Julius Goren testified that during the negotiations he did not have any dealings directly with Griffin or Greiner; he (Goren) made an offer of exchange through Drannon; Drannon showed him a sketch of the property, which sketch is Exhibit 5; thereafter when he (Julius), his son Osias, and Drannon went to the motel they had the sketch with them; they saw the manager of the motel, who said he was working for a management company (which managed the motel); he (witness) inspected the motel; he did not pay attention to anything on the sketch; he was interested in the location of the buildings and the physical layout and condition of the property; he, Drannon, and the manager went into several units of the motel and they walked from ''corner to corner on the property''; he (witness) saw a fence along Tyler Avenue, which fence was about 18 to 20 feet from the cabins; he saw a hedge fence at the easterly side of the property; he was at the motel about two hours; Drannon took the sketch with him when they left the motel; at another date, before the exchange agreement was made, the four plaintiffs went to the motel and looked it over; the manager showed the motel again; at the closing of the escrow he (witness) saw the sketch, Exhibit 5, among the papers which Mr. Griffin brought to the escrow, and he (witness) asked if he would be permitted to keep the paper; one of the three men there let him have the sketch, and he kept it.

Osias Goren testified that Drannon showed the sketch to him and his father; when they were inspecting the property they used the sketch to determine the positions of the buildings; the property lines on the sketch were pretty much as they were represented by the apparent property lines on the land itself; he, his father, the manager, and Drannon walked along the boundaries of the property; the boundaries seemed pretty well outlined by landmarks—Magnolia Boulevard, the fence along Tyler Avenue on the west, a fence along the north part of the land, and a hedge fence on the east side; these enclosed an area which was landscaped and tended to by the management; he saw the sketch at the escrow, where it was in Mr. Griffin's files; Julius Goren asked if he could have Mr. Griffin's papers which related to the property, and Mr. Griffin gave him papers which included the sketch.

Mr. Griffin testified that at the time he was negotiating for the purchase of the trust deed from the Roses he assumed

that the westerly boundary was the fence; he was first informed of the encroachment in 1951 when Julius Goren gave a copy of the survey to him; when he sold the motel to plaintiffs he intended to sell all the property he received on the foreclosure of the trust deed; he owned the property about eight months; he employed the Walters Company to manage the motel; that company had no authority to show the property for sale; he never saw the sketch (Exhibit 5) before this action was filed; he did not meet Julius or Osias Goren before he went to the escrow; he did not hand any map of the property to Julius Goren, or see anyone hand a map to him, at the escrow; he had only one map and that was drawn by his insurance company, showing the locations of the buildings but it did not show the boundaries; it was a pencil sketch; he had the map during the time the Gorens were negotiating, through Drannon, for the exchange; but he could not find the map thereafter.

Mr. Greiner testified that in 1949 he was a real estate salesman, working under Mr. Griffin's broker's license; in April, 1949, Julius Goren came to his office and talked with him about the exchange; he gave Julius Goren a "set-up" of the motel, but it did not show the dimensions of the property; he did not give the sketch (Exhibit 5) to Goren; to the best of his recollection he never saw the sketch before his deposition was taken; he did not talk with Julius or Osias Goren before the escrow was started; he did not see the sketch at the escrow.

After the attorneys had argued the question of liability, plaintiffs asked for permission to amend the fourth cause of action (declaratory relief) to conform to proof. Defendants' objection to the amendment was overruled. The judge said that plaintiffs are "permitted to file an amendment to the complaint setting out a cause of action asking for a reformation of the contract based on the mutual mistake of fact." Defendants asked for permission to file an answer setting up defenses to the amendment. The motion was denied. Then defendants made a motion that they "be permitted to later open the proof in order to establish additional defenses that they would have available to the fourth cause of action as amended." The motion was denied. The judge said they would proceed with "the question of damages, the court having ruled that there is liability." Defendants asked if the amendment would be filed. The judge said it was not necessary to file the amendment—that plaintiffs could proceed on

the theory that the other cause of action was pending. (That statement was made on December 28, 1954.) Defendants asked for a continuance. The judge replied that that might be a proper motion after plaintiffs concluded their presentation (referring to damages), and then if defendants needed additional time for evidence the motion might be made. Defendants' counsel then said: ''For the purpose of giving evidence bearing on damages.'' The judge said that it ''may appear that that is the proper thing to do. He may fall down flat on his face on the other part [damages].'' The judge said that it was not necessary at that time to rule on the motion (for a continuance), that he would let it go, and that defendants might renew the motion.

The trial proceeded on the issue as to damages and was concluded January 31, 1955. The amendment to conform to proof was filed January 28, 1956.

In that amendment it was alleged that the legal description stated in the escrow agreement was erroneous in that it did not accurately describe the premises intended to be conveyed, and contrary to the mutual intention of the parties the description omitted an area of land approximately 21 feet by 396 feet upon which certain improvements of the motel were located; that in order to make the agreement conform to the actual intention of the parties, it is necessary that the description in the agreement be reformed so as to encompass said area; plaintiffs have paid the agreed compensation for the premises as correctly described; upon information and belief plaintiffs allege that defendants do not have, and have not had, title to the omitted area; a controversy exists between the parties as to the rights of plaintiff under the escrow agreement, in that, defendants assert that plaintiffs are not entitled to any relief on account of the erroneous description. The prayer of the amendment was that the escrow agreement be reformed and corrected.

After plaintiffs ascertained from the survey that a portion of the main building, approximately 7 feet by 200 feet, was on the 21-foot strip owned by the city, they purchased the 7-foot strip (extending the full 396 feet) from the city for $3,500.

Julius Goren testified that the value of the orange grove in April, 1949, was $120,000, which amount he itemized as follows: land, $70,000; equipment, $35,000; two houses, $15,000.

Osias Goren testified that the value of the orange grove in

May, 1949, was as follows: 100 acres of orange trees, $1,000 an acre; 18 acres, between $500 and $600 an acre; house and barn, $10,000; equipment, $35,000. (A total of approximately $155,000.)

James J. Crilly, called as a witness by plaintiffs, testified that he had been a real estate broker since 1933; his place of business was Los Angeles; he did not know any particulars regarding the orange grove involved here. He testified further, over the objection of defendants, that in his opinion the value of orange groves in the Lindsay area was from $1,000 to $2,000,'' and the value of land in that area in 1949 was around $500 an acre.

Mr. Griffin testified that the reasonable value of the orange grove in April, 1949, including the 120 acres, the trees, houses and equipment was $35,000; and that he sold the property to Mr. Page a month or two after he acquired it.

 Mr. Page, called as a witness by defendants, testified that he had been engaged in the real estate business in Lindsay for 42 years; he was acquainted with the values of orange groves in that area; he bought the orange grove from Mr. Griffin; he was acquainted with the reasonable value of the orange grove in April, 1949; the reasonable value of the orange grove was $300 an acre at that time; the reasonable value of the equipment was ''somewhat less than $2000.'' Defendants asked him when he purchased the grove and how much he paid for it. Objections by plaintiffs to those questions were sustained. Defendants made an offer to prove that Mr. Page purchased the property for $35,000 within two months after the sale to Mr. Griffin. An objection by plaintiffs to the offer of proof was sustained.

Mr. Kroells, called as a witness by defendants, testified that he had been a citrus grower in Lindsay for 44 years; he was familiar with the orange grove involved here; in April, 1949, the property had no value as an orange grove, but its value at that time as land, including the houses and equipment, was $300 an acre. (A total of $36,000.)

Julius Goren testified that the value of the motel in April, 1949, including the 21-foot strip, was $170,000; the value of the property without the 14-foot strip (width after buying 7 feet from city) was approximately $135,000; the value of the property without the 21-foot strip was approximately $80,000.

Osias Goren testified that the value of the motel property in April, 1949, including the 21-foot strip was $150,000; the

value of the property without the 14-foot strip was approximately $110,000.

Mr. Wagner, called as a witness by plaintiffs, testified that he had been a realtor and appraiser in Riverside since 1926. He testified further, in effect, that the value of the motel property in April, 1949, including the 21-foot strip, was $152,500; the value of the property without the 21-foot strip was $124,300. He also testified that the difference between those two valuations was based on the following estimates: value of the 21-foot strip, $10,500; moving trees, fences, building, etc., $6,700; consequential damages, such as easement retained by the city and loss of rentals during remodeling, $10,000.

T. E. Bower, called as a witness by defendants, testified that he had been a real estate broker in Riverside since 1948; the value in 1949 of the property conveyed by defendants to plaintiffs (with the property line 21 feet east of the fence and 7 feet under the buildings) was $133,000; if the property line was 14 feet east of the fence (that is including the 7 feet purchased by plaintiffs from the city of Riverside) the value was $136,000; if the property line was the fence, the value was $137,000.

Harry Iverson, called as a witness by defendants, testified that he had been a real estate broker in Riverside since 1930; the value in 1949 of the property conveyed by defendants to plaintiffs was $133,000; if the property line was the fence, the value of the property was $136,000.

The court found that defendants Griffin represented to plaintiffs that the property comprised a rectangular area, the westerly boundary of which was a board fence which fronted on Tyler Avenue a distance of approximately 396 feet, and that all the land and improvements belonging to the motel property were within said rectangular area; plaintiffs relied upon said representations and would not have entered into the agreement had it not been for their reliance upon the representations; it was the mutual intention of the plaintiffs and defendants Griffin that the escrow agreement would have to include all the property referred to in the representations; that due to mutual mistake of said parties the description in the agreement did not describe all the property referred to in the representations, in that, the agreement did not include said area of land which was approximately 21 feet by 396 feet along Tyler Avenue, and upon which there were improvements which were a part of the motel; defendants Griffin did

not own, and had not owned, said area of land; the area was owned by the city of Riverside; the said representations of defendants in respect to the area were false and unwarranted, and should have been known by defendants Griffin to be false and unwarranted at the time they were made; plaintiffs performed everything on their part to be performed under the agreement; defendants Griffin conveyed to plaintiffs the property described in the agreement; plaintiffs entered into possession of all the motel property referred to in defendants' representations, including the area of land approximately 21 feet by 396 feet; thereafter until 1951 plaintiffs invested approximately $50,000 in improving the motel property; plaintiffs did not know or discover that defendants had never owned the omitted area until 1951, nor could they by the exercise of reasonable diligence have discovered that fact at any time prior thereto; at said time plaintiffs promptly notified defendants of said discovery and the fact that the improvements encroached and trespassed upon land owned by the city; by reason of the substantial investment of money, time and labor in improving the property, a rescission of the purchase would not be practicably feasible, nor would plaintiffs be adequately compensated thereby; by reason of the foregoing findings, plaintiffs have sustained damages in the amount of $30,000; plaintiffs are entitled to reformation of the escrow agreement, reforming it to conform to the intention of the parties.

At the close of the trial, the judge said that judgment would be in favor of defendant Greiner. (Apparently no judgment was entered as to him.) The judgment provided that plaintiffs have judgment against defendants Griffin for reformation of the escrow agreement by reforming the description in the agreement to include said area of land which was approximately 21 feet by 396 feet, lying to the west of land described in the agreement, that said reformation was for the purpose of correctly delineating the agreement of the parties, that plaintiffs have judgment against defendants Griffin for $30,-000, and for costs.

Appellants (the Griffins) contend that the court erred in sustaining plaintiffs' objections to their questions (1) as to when Mr. Page bought the orange grove from the Griffins, and (2) as to the amount he paid for it. They also contend that the court erred in sustaining plaintiffs' objection to their offer to prove that Mr. Page bought the grove within two months after the Griffins acquired it, and that he paid $35,000 for it. As above shown, the first cause of action was for

damages for fraud in exchange of property. ▊ Section 3343 of the Civil Code provides, in part: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." The measure of damages set forth in that section is referred to as the "out-of-pocket loss rule." (*Eatwell* v. *Beck*, 41 Cal.2d 128, 135 [257 P.2d 643].) ▊ The questions referred to were asked, and the offer of proof was made, while Mr. Page was testifying regarding the value of the orange grove which he had purchased from the Griffins. The objections to the questions and the offer of proof should not have been sustained. In *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935], wherein there was a cross-complaint for damages for fraud in the sale of real and personal property, there was evidence as to the price obtained at a sale of the identical property in question, and it was held therein that the evidence was admissible. It was said therein at page 758: "[A]uthorities elsewhere [outside this state] are practically unanimous in holding that evidence of other sales of the identical real property is admissible. [Citations.] There is no reason for extending the much-criticized exclusionary rule to evidence of sales of the *identical* property in question, whether realty or personalty . . . ." In *Eatwell* v. *Beck*, 41 Cal.2d 128 [257 P.2d 643], it was said at page 134: "Evidence of 'sales of the *identical* property in question, whether realty or personalty' is also a proper indicium of value." In the present case, the court erred prejudicially in sustaining the objections to the questions and the offer of proof.

▊ Appellants also contend that the court erred in permitting plaintiffs to amend the complaint to conform to proof by alleging a cause of action for reformation of the escrow instructions on the ground of mutual mistake of fact. The issue as to liability for damages was tried first, and apparently that issue was tried on the theory of fraud as alleged in the first cause of action. After the judge had ruled that there was liability and had granted the motion to amend to conform to proof, counsel for defendants asked if the ruling as to liability was made with reference to any particular cause of action. The judge replied, "No, I am talking about the first cause of action. That is the only one that we have been discussing." The first cause of action, alleging fraud, was of

course a proceeding at law. The amendment to conform to proof, alleging a cause of action for reformation of escrow instructions, was a proceeding in equity. Prior to granting the motion to amend to conform to proof, it was stipulated that the city of Riverside owned the 21-foot strip at the time of the exchange and for sometime prior thereto. Also, the amendment to conform to proof, which was filed later, alleged that the Griffins did not own the strip. Under such circumstances it is clear there could not be specific performance of such a reformed agreement. In *Carpenter* v. *Froloff*, 30 Cal.App.2d 400 [86 P.2d 691], there was a cross-complaint by one White against the Froloffs for damages for breach of agreement, wherein it was alleged that through a mistake known to the Froloffs a written agreement, and a deed deposited in escrow, did not accurately describe the real property which the Froloffs (as sellers) exhibited to White and represented that they owned. (Apparently the legal description in the agreement and deed did not include certain mining property which was exhibited, but the description did include other land.) With permission of the court, White amended the cross-complaint to conform to proof, and prayed for reformation of the agreement so that it would include a description of the mining property. The court found that the Froloffs had breached the agreement and that White was entitled to damages; and that White was entitled to have the agreement reformed to include a description of the mining property. The appeal therein was on the judgment roll. The Froloffs contended that the trial court erred in reforming the agreement. On appeal, the court said (pp. 407-408) that since there was nothing in the pleadings or the findings to the effect that the Froloffs owned or were able to sell or intended to sell the property as described in the findings, there was an omission of a finding necessary and material to sustain the judgment. The court also said (p. 408): "Unless appellants [the Froloffs] owned, or had acquired the right to own, the lands they represented they were selling, how could they specifically perform the contract as reformed? And if appellants could not specifically perform the contract, reformation of necessity would be futile. The findings therefore wholly fail in material particulars to make out a case for the application of the remedy of reformation of the contract." The judgment therein was reversed. In the present case, as above shown, it was established by stipulation and the amendment itself that the Griffins did not own the 21-foot strip. The plaintiffs (Gorens) knew, prior to

seeking equitable relief by way of reformation, that defendants Griffin did not own the strip and could not specifically perform such reformed agreement. The court erred in granting the motion to amend the complaint to conform to proof.

By reason of the above conclusions, it is not necessary to decide other contentions on appeal.

The judgment is reversed.

Vallée, J., concurred.

Shinn, P. J., did not participate.

A petition for a rehearing was denied by operation of law (rule 27e, Rules on Appeal) July 22, 1957. Respondents' petition for a hearing by the Supreme Court was denied August 13, 1957.