[Civ. No. 10357.   Third Dist.   Dec. 11, 1962.]

MERCANTILE ACCEPTANCE CORPORATION OF CALIFORNIA, Plaintiff and Respondent, v. GLOBE INDEMNITY COMPANY, Defendant and Appellant.

638

Robert M. Cole for Defendant and Appellant.

William T. Sweigert for Plaintiff and Respondent.

SCHOTTKY, J.—Globe Indemnity Company appeals from a judgment in favor of Mercantile Acceptance Company in an action to recover on a statutory bond issued by Globe to W. C. Jones, doing business as W. C. Jones Auto Sales.

The action went to trial on two different causes of action, each based on fraud, against Globe alone as the default of Jones had been entered previously.

Before discussing the contentions made by appellant, we shall give a brief summary of the evidence, bearing in mind the familiar rule that the evidence and all inferences that may be reasonably deduced therefrom must be viewed in the light most favorable to the respondent and that conflicts in the testimony must be disregarded.

Jones was a used car dealer. Mercantile Acceptance Corporation is and was an automobile finance company. On April 30, 1958, Jones "floored" with Mercantile Acceptance a 1956 Ford sedan which belonged to one Martinez. He delivered the ownership certificate which was unsigned and signed a trust receipt and promissory note. In return Mercantile issued a draft to Jones which he endorsed and turned over to Mercantile to be applied on his account. Martinez testified that he had loaned the car to Jones but that he did not authorize Jones to deliver the "pink slip" which was in the glove compartment of the vehicle to Mercantile. Martinez recovered his automobile. The second transaction with which this case is concerned occurred about March 20, 1958. Jones presented a conditional sales contract on a 1958 Chevrolet station wagon for discount. He warranted that he had title to the vehicle. Mercantile advanced Jones $2,400 on the contract. In April Mercantile learned that General Motors Acceptance Corporation was the legal owner of the vehicle and had never

been paid off. Jones paid General Motors Acceptance Corporation $900. General Motors Acceptance Corporation subsequently repossessed the car and eventually Mercantile Acceptance paid off the balance due, $1,666.70, in exchange for the legal title. This car was subsequently resold for $2,105. In addition Mercantile expended $69.71, which represented the cost of returning the car to Sacramento, and $108.90 for insurance.

The bond on which this action was brought was issued under the provisions of sections 11710 and 11711 of the Vehicle Code. The latter section, which was then section 205, read in part: "(a) If any person shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer or one of such dealer's salesmen acting for the dealer, in his behalf, or within the scope of the employment of such salesman; provided, such person has possession of a written instrument furnished by the licensee, containing stipulated provisions and guarantees which the person believes have been violated by the licensee, or shall suffer any loss or damage by reason of the violation by such dealer or salesman of any of the provisions of Division 3 or 6 of this code, such person shall have a right of action against such dealer, his said salesman, and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from or sold to the dealer."

It is noted that this statute permits certain persons defrauded by an automobile dealer to recover on the surety bond which each dealer must file with the Department of Motor Vehicles. The recovery is the loss or damage suffered by reason of fraud, with a limitation that the amount recovered shall not exceed the value of the vehicle. The statute does not set forth the measure of damages.

As stated in *Clar* v. *Board of Trade,* 164 Cal.App.2d 636 [331 P.2d 89], at page 645: "In the United States there are, in general, two different measures of damages for actionable fraud whether intentional or negligent. One, adopted in the majority of states, is the so-called 'benefit of the bargain' rule, the other, the 'out of pocket rule.' For many years the California courts applied the 'benefit of the bargain' rule. (See *Evans* v. *Gibson,* 220 Cal. 476 [31 P.2d 389]; *George Cople Co.* v. *Hindes,* 34 Cal.App. 576 [170 P. 155].) But in 1935 the Legislature enacted section 3343 of the Civil Code. It provides:

" 'One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

" 'Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled.'

"With the enactment of this code section California joined the minority of jurisdictions limiting damages in such cases to the amount the plaintiff is 'out of pocket.' (See Prosser on Torts (2d ed.) 568, note 82.) ■■■ The Supreme Court has held that the code provision provides the exclusive measure of recovery, and is not merely alternative. [Citing cases.] . . ."

The problem of the measure of damages is discussed by our Supreme Court in *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935], at page 762: "In view of the broad, general language of section 3343 of the Civil Code and the uncertainty in the law that existed both here and elsewhere prior to the adoption of that section, it is reasonable to conclude that the statute was enacted to provide a uniform rule for all fraud cases, and we can see no reason for refusing to follow the decisions which have applied it as the exclusive measure of damages. Moreover, to hold that an additional or alternative measure may be applied in some cases would create further confusion with respect to when the alternative measure would be appropriate in place of the statutory measure and whether the matter would be one for the judge, as a matter of law, or for the jury.

■■■ "The provisions of section 3343 to the effect that the defrauded person may also recover any 'additional damage' arising from the particular transaction and that nothing in the statute shall be deemed to deny to such a person 'any legal or equitable remedies' to which he may be entitled, do not indicate that any other *measure of damages* may be applied. The right to recover *additional* damages does not refer to the *measure* of damages, but, rather, to such matters as expenses or other consequential injury resulting from the fraud. (See *Jacobs* v. *Levin*, 58 Cal.App.2d Supp. 913, 917 [137 P.2d 500]; see also Rest., Torts, § 549, which also permits such additional recovery.) ■■■ The provision relating to other legal or equitable *remedies* likewise does not pertain to measure of damages, but, rather, it preserves such other remedies as the right to rescind or the right to recover on a warranty, if

any. (See *Jacobs* v. *Levin, supra,* at p. 918.) ▮ The construction which has been placed on section 3343 does not preclude the allowance of exemplary damages. (Civ. Code, § 3357; *Taylor* v. *Wright,* 69 Cal.App.2d 371, 386 [159 P.2d 980].)

"In the present case it is clear, therefore, that the trial court could properly award only out-of-pocket loss in fixing respondents' damages. . . ."

▮ It is clear, therefore, that the measure of damages allowed for fraud in this state is the amount that the plaintiff is out of pocket. Applying this rule to the transaction involving the conditional sales contract on the 1958 Chevrolet station wagon, on which cause of action the court awarded damages in the sum of $2,401.62, we believe the court erred in the amount awarded. We believe that the actual amount of the out-of-pocket loss of Mercantile was $2,072.64, computed as follows:

| | |
|---|---:|
| Payment for contract | $2,400.00 |
| Payment to G.M.A.C. for title | 1,666.70 |
| Miscellaneous costs, including repossession and insurance | 193.72 |
| | $4,260.42 |
| Less amount received for automobile | 2,105.00 |
| | $2,155.42 |
| Less insurance refund | 82.78 |
| Out-of-pocket loss | $2,072.64 |

Regarding the Martinez transaction, it is appellant's contention that since the finance company was an unsecured creditor of Jones for the sum of $900 before the fraudulent transaction, and was also an unsecured creditor afterwards in the same amount, he has suffered no "out-of-pocket" loss.

The vice of this argument is its failure to recognize that the unsecured debt before the fraudulent transaction (or, more precisely, *at the time of* the contract) is not the same debt as that existing afterwards, and the values of the two were quite different. The chose in action owned by the finance company after the fraud was (and is) valueless, whereas the chose in action at the time of the contract, fraudulently contrived, was worth $900. This is because the debt at that time was about to be paid and the fund for its payment was being made (and was made) available. The finance company had loaned $900 to Jones who was indebted to it in that amount on open account. We can assume that the finance company was pressing for payment and that Jones, "wolf at door," contrived and executed the deal which we have stated above:

the finance company would put in $900 of "new" money (thus making a total outlay of $1,800) for which it would receive back (a) $900 to repay the unsecured loan, plus (b) security worth more than $900, thus making the value of that with which the plaintiff parted equal the value of that received. Had the deal been honest there would have been neither gain nor loss. But that was not what occurred. The finance company did not receive its security. It thereby suffered an out-of-pocket loss:

| | |
|---|---|
| Value parted with | $1,800 |
| Less value received | 900 |
| Loss | $ 900 |

Stating it another way, it was the intention of the Legislature in enacting section 3343 of the Civil Code that the victim of a fraudulent tortfeasor should not profit by the fraud; he should merely be made whole. Here, when the finance company recovers $900, it does not profit; it *is* merely made whole.

Appellant also challenges the sufficiency of the evidence to support the finding of fraud.

Insofar as the conditional sales contract was concerned, the evidence shows that the seller warranted he had good title. The evidence shows that Jones did not have title. The evidence also shows that Mercantile had no knowledge of General Motors Acceptance Corporation's interest and would have paid General Motors Acceptance Corporation if it had known of its interest. The trial court could find fraud on these facts even though the evidence developed at the trial would support an opposite inference. The evidence to support the finding of fraud in the Martinez transaction is also sufficient. Jones obtained a loan on an automobile which he did not own. Mercantile loaned money on the belief it was obtaining security for the loan. In fact it did not. On these facts the trial judge could find fraud.

No other points require discussion.

The judgment is reversed. The trial court is instructed to enter a judgment in conformance with the views expressed herein. Costs are to be recovered by the respondent.

Peek, P. J., and Pierce, J., concurred.

A petition for a rehearing was denied December 28, 1962, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1963. Peek, J., did not participate therein.