[Civ. No. 32854. First Dist., Div. Two. Feb. 7, 1975.]

HANORAH M. O'NEIL, Plaintiff and Respondent, v.
JAMES SPILLANE et al., Defendants and Appellants.

150

**COUNSEL**

Gregory S. Stout for Defendants and Appellants.

Kutsko, Moran & Mullin, Ronald J. Mullin and Richard H. Moran for Plaintiff and Respondent.

**OPINION**

**KANE, J.**—Defendants, James and Frances Spillane, appeal from the trial court's judgment ordering reconveyance of real property and awarding damages in favor of respondent.

The subject matter of the present litigation is the validity of a gift deed executed by respondent on December 18, 1964. By this deed respondent, the sole owner of residential property located at 87 States Street, San Francisco, created a joint tenancy in said property vesting a one-third undivided interest to appellants James Spillane and Frances Spillane

and herself. The circumstances leading to the execution of the deed may be summarized as follows:

In July 1960 respondent lost her sister, her only living relative. The death of her sister wrought an unusually profound emotional strain upon respondent and triggered a downward mental and emotional trend in her life. As a consequence, respondent, an aging and lonely woman, became increasingly dependent upon a few friends upon whom she felt she could rely. Among these friends were appellants.

Toward the end of 1964 respondent asked Mr. Spillane to find an attorney to draft her will so that upon her passing she might reward some of those who had helped her during her lifetime. Mr. Spillane enlisted the services of his longtime friend, Mr. Sullivan, an attorney. Mr. Spillane spoke to Mr. Sullivan, asking him to prepare a will leaving the real property in question to his wife and himself. Mr. Sullivan relayed this information to his wife, Mrs. Sullivan, also an attorney. Thereupon, without first consulting respondent, Mrs. Sullivan drafted a will containing the provisions requested by Mr. Spillane. The next day, Mrs. Sullivan, accompanied by her husband and Mr. Spillane, visited respondent in her home taking a will ready to be signed. After a half-an-hour interview with Mrs. Sullivan, respondent signed the will and was convinced that she also ought to execute a deed of joint tenancy with the Spillanes. In an apparent belief that nothing would be taken from her, the following day respondent signed a gift deed giving two-thirds of her property to the Spillanes in joint tenancy.

Following the signing of the deed, everything continued almost the same as it had been before with a few exceptions. Thus, while respondent paid the taxes on the home, appellants paid the taxes on the adjoining vacant lot. Also, at respondent's request, Mr. Spillane made a few repairs around the property, such as fixing broken windows, roof leaks and removing a garage which constituted an encroachment. There was ample evidence from which the jury could infer that the fact that appellants owned two-thirds of the property was concealed from respondent, and that she honestly believed that the presence of appellants' names on the tax bills was only for the purpose of avoiding probate.

When she discovered that appellants were actual owners, respondent requested an immediate reconveyance of the property to her. When appellants refused to comply, respondent attempted to break the joint

tenancy by conveyance to a third party and a reconveyance to herself. Thereafter the present action was instituted seeking rescission and damages.

After a lengthy trial, in which testimonial and documentary evidence was introduced, the jury rendered both special and general verdicts. Although in the special verdict appellants were found guilty of undue influence only, and not guilty of fraud, oppression or actual malice, in its general verdict the jury awarded respondent not only rescission and compensatory damages, but punitive damages as well. Both during and after the trial appellants made several motions to eliminate the punitive damages. Thus, they moved for a directed verdict, which was denied. Thereafter, appellants filed a motion for an order vacating judgment under Code of Civil Procedure, section 663, subdivision 2, and when that proved unsuccessful they moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. In the latter procedure the trial court eliminated the $10,000 punitive damages and granted a new trial unless respondent accepted a reduction of the $10,000 compensatory damages to $2,500. Respondent accepted the remittitur, whereupon the motion for new trial was denied. The present appeal followed.

On appeal, appellants seek reversal mainly on the ground that the finding of undue influence is not supported by sufficient evidence. In addition, they press the argument that the judgment at hand should be overturned also on account of certain procedural errors, misconduct of respondent's counsel, and erroneous jury instructions. We discuss appellants' arguments seriatim.

*Sufficiency of Evidence:* Pursuant to section 1575 of the Civil Code,[1] "Undue influence consists:

"1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking an unfair advantage of another's weakness of mind; or,

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

---

[1] Unless otherwise indicated, all references will be made to the California Civil Code.

■ We believe the instant record sustains the finding of undue influence both on the basis that appellants breached the confidential relationship existing between the parties (subd. 1), and that they took an unfair advantage of respondent's weakness of mind (subd. 2).

■ It is, of course, well settled that while the mere fact that a relationship is friendly and intimate does not necessarily amount to *a confidential relationship,* such relationship *may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another* (*Estate of Cover* (1922) 188 Cal. 133, 143 [204 P. 583]; *Faulkner* v. *Beatty* (1958) 161 Cal.App.2d 547, 550 [327 P.2d 41]; *Meyer* v. *Zuber* (1928) 92 Cal.App. 767, 772 [268 P. 954]). It is likewise frequently emphasized that the existence of a confidential relationship presents a question of fact which, of necessity, may be determined only on a case by case basis (*Kloehn* v. *Prendiville* (1957) 154 Cal.App.2d 156, 160 [316 P.2d 17]; *Steinberger* v. *Steinberger* (1943) 60 Cal.App.2d 116, 122 [140 P.2d 31]).

■ Tested by these principles, the instant evidence and the reasonable inferences drawn therefrom amply support the existence of a confidential relationship between appellants and respondent. Thus, the record irrefutably shows that the intimate relationship between the parties was not of recent origin, but rather of long duration, dating back to a friendship between Mrs. Spillane's mother and respondent. The close relationship lasted throughout Mrs. Spillane's childhood and continued after her marriage to Mr. Spillane in 1952. In fact, respondent was considered as a family member. She attended family events, such as weddings and christening of appellants' children and gave generous gifts to the Spillanes and their children. The closeness of the relationship intensified after respondent lost her sister in 1960 and from that time on respondent relied even more heavily on appellants. This is demonstrated inter alia by the circumstance that she intended to include the Spillanes in her will and enlisted Mr. Spillane's help to obtain an attorney to draft her last will and testament. In addition, there is direct evidence in the record showing that in conducting her affairs respondent placed trust and confidence in Mr. Spillane.

The record is similarly clear that it was due to appellants' activity that the deed in dispute was prepared, executed and recorded. The transaction no doubt resulted in a definite detriment to respondent who was thereby deprived of her primary asset providing her security and livelihood, and yielded a substantial benefit to appellants. In this type of

situation a presumption arises that the advantage obtained by the grantee was by reason of undue influence exerted on the grantor (*Stewart v. Marvin* (1956) 139 Cal.App.2d 769, 775 [294 P.2d 114]; *Sparks* v. *Sparks* (1950) 101 Cal.App.2d 129, 135 [225 P.2d 238]). Such a presumption is evidence and is, by itself, sufficient to support the finding of undue influence (*Faulkner* v. *Beatty, supra* at p. 551; *Khoury* v. *Barham* (1948) 85 Cal.App.2d 202, 212 [192 P.2d 823]).

But the finding of the jury is sustainable also on the ground that by inducing respondent to part with her property and to vest an immediate interest in them, appellants took an unfair advantage of respondent's weakness of mind within the meaning of section 1575, subdivision 2. The record is replete with evidence that respondent was greatly afflicted, both mentally and emotionally, by her sister's death. This, in combination with her age and solitariness, resulted in a gradual loss of her mental vigor and susceptibility to imposition and influence.[2] Perhaps the best evidence to demonstrate her mental state was respondent's trial testimony itself, which was full of self-contradictions and disclosed obvious signs of forgetfulness, senility, loss of comprehension and mental control.

At the same time the record is persuasive that respondent did not actually know what she was doing and was led to believe that she did not part with any part of her property by signing the deed in dispute. This proposition is supported not only by respondent's own testimony but also by Mr. Spillane, who stated that respondent was advised that nothing would be taken away from her by the transaction and that she, in fact, did not believe that she had transferred any portion of her property to appellants.[3] Thus, the evidence hardly leaves any doubt that the

---

[2]This circumstance was confirmed by Dr. Hartley, a friend and physician of respondent, who testified as follows: "Q. And as a physician, what would be your opinion of Miss O'Neil's mental state? A. Well, I believe that Miss O'Neil demonstrates the changes that ordinarily occur with aging, in that she has a certain degree of forgetfulness and of ability to be swayed by things that are said to her and around her. And has a high degree of dependence and perhaps fearfulness for the future. Q. Did she have a particular susceptibility to being swayed, as you say, by influences around her? A. I would think so."

[3]During cross-examination the following colloquy took place between respondent's counsel and Mr. Spillane: "Q. Are you trying to tell this jury that you thought that a gift deed . . . didn't transfer the property . . . A. This was a gift deed in joint tenancy, and I knew that in joint tenancy there was no immediate transfer of any property. It was just a matter of someone else's name being placed on there jointly with . . . Q. . . . . Is it your testimony, Mr. Spillane, that you didn't believe Miss O'Neil was transferring any property to you when she executed that deed, is that what you are telling the jury? A. I am saying that *she didn't believe she transferring* [sic] *any part of her property to my wife and me at that time."* (Italics added.)

purported transfer in question was the result of overreaching, and that appellants took an unfair advantage of respondent's lack of understanding and mental weakness.

Appellants' assertion that in order to prove undue influence respondent had the burden of showing that her mind was overpowered and her volition was borne down by appellants at the time the deed was made is rooted in an apparent miscomprehension of law.

The rule proposed by appellants has applicability only to will contest cases where the testamentary capacity and the freedom of will of a testator are questioned. In such cases the test of proving undue influence is indeed whether the legatee exercised " 'a pressure which overpowered the mind and bore down the volition of the *testator* at the very time the will was made,' " and that " 'the influence was such as, in effect, to destroy the *testator's* free agency and substitute for his own another person's will.' " (*Estate of Dobrzensky* (1951) 105 Cal.App.2d 134, 143 [232 P.2d 886]; see also: *Estate of Arnold* (1940) 16 Cal.2d 573, 577 [107 P.2d 25]; *Goldman* v. *Goldman* (1953) 116 Cal.App.2d 227, 234 [253 P.2d 474]; italics added.) However, the cases make it evident that in order to prove that one is in a mentally weakened condition within the meaning of section 1575 it is not necessary to show total incapacity to contract, but only that the grantor is lacking in such mental vigor as to enable him to protect himself against an imposition (*Peterson* v. *Ellebrecht* (1962) 205 Cal.App.2d 718, 721-722 [23 Cal.Rptr. 349]). In accordance therewith, the law makes a clear distinction between the proof of the existence of undue influence necessary to set aside a will and that which is required to cancel a deed of gift or conveyance *inter vivos (Stewart* v. *Marvin, supra).* █ While no presumption of undue influence is indulged in upon the contest of a will unless confidential relations are first established, with respect to gifts or conveyances *inter vivos* the susceptibility to imposition, the extreme age and infirmity, of the grantor, together with slight evidence of circumstances from which it may be inferred that the instrument was the product of coercion, will suffice to shift the burden and require the beneficiary to show affirmatively that the transaction was fair and free from influence (*Longmire* v. *Kruger* (1926) 80 Cal.App. 230, 238 [251 P. 692]; *Faulkner* v. *Beatty,* supra, Stewart v. *Marvin, supra*).

█ As spelled out before, in the case at bench it was established that respondent was susceptible to imposition on account of her age and

mental infirmity and the evidence of record gave rise to an inference that the transaction complained of was not the product of respondent's free volition. Under these circumstances, the burden of proof shifted to appellants, and it was incumbent upon them to overcome the presumption of undue influence. Admittedly, appellants produced evidence to show that the deed in question was signed by respondent on her own volition after Mrs. Sullivan had explained to her the difference between a will and a deed. This evidence, however, was contradicted by both respondent and Mr. Spillane. Thus, the issue became one of conflicting evidence, the resolution of which was the exclusive province of the trier of fact *(Khoury* v. *Barham, supra).*

*Procedural Errors:* Appellants next assail the judgment on procedural grounds. Thus, for the first time on appeal, they raise the defense of the statute of limitations contending that the complaint below failed to allege when respondent learned of the facts giving rise to fraud or undue influence. Appellants also maintain that the judgment is subject to reversal because the complaint did not state sufficient facts upon which undue influence could be premised. Both contentions of appellants are devoid of any merit.

It is blackletter law that the defense of the statute of limitations is a personal privilege which must be affirmatively invoked in the lower court by appropriate pleading (if the defense appears on the face of the complaint, it must be raised by demurrer; otherwise it must be specially pleaded in the answer) or is waived *(Hall* v. *Chamberlain* (1948) 31 Cal.2d 673, 679 [192 P.2d 759]; *Dicker* v. *Bisno* (1957) 155 Cal.App.2d 554, 560 [318 P.2d 159]; 3 Witkin, Cal. Procedure (2d ed.) § 939, p. 2518). Here, the defense of the statute of limitations was not raised either by demurrer or answer, and as a consequence it must be deemed to have been waived.

Appellants' second contention is likewise meritless. It is a general proposition that the objection that a complaint does not state facts sufficient to constitute a cause of action is not waived by failure to demur, but may be raised for the first time on appeal. However, if objection is interposed for the first time on appeal, the pleading will be liberally construed and will be upheld if the necessary facts in the complaint appear by implication or as a conclusion of law *(Langstaff* v. *Mitchell* (1931) 119 Cal.App. 407, 409 [6 P.2d 546]; *Tietke* v. *Forrest*

(1923) 64 Cal.App. 364, 366 [221 P. 681]). Even a cursory reading of the complaint here[4] reveals that the cause of action based on undue influence was pleaded at least as a conclusion of law, and consequently it must be upheld under the foregoing rule. Additionally, it ought to be noted that under the rule of liberal interpretation the complaint in question does state facts sufficient to constitute a cause of action (cf. *Hick* v. *Thomas* (1891) 90 Cal. 289 [27 P. 208, 376]; *Rottman* v. *Rottman* (1921) 55 Cal.App. 624 [204 P. 46]; 3 Witkin, Cal. Procedure, *supra,* § 421, pp. 2077-2078).

*Misconduct of Counsel:* Appellants' assertion that the judgment should be reversed for the misconduct of respondent's counsel may be briefly disposed of for two main reasons. First, under well settled law, a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished (*Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750]). Appellants here failed to show that they made an objection on this ground and/or requested an admonition to the jury to disregard counsel's remarks. Second, it is axiomatic that a judgment will not be disturbed on appeal on the basis of misconduct unless it appears that such misconduct resulted in miscarriage of justice (Code Civ. Proc., § 475; *Gerberich* v. *Southern Cal. Edison Co.* (1938) 26 Cal.App.2d 471 [79 P.2d 783]). Appellants have not sustained the burden of proving the requisite prejudice and an independent research of the

[4]In pertinent part the complaint in dispute reads as follows: "That at said time and place defendants, and each of them, obtained the aforesaid deed from plaintiff by taking advantage of her great bereavement and mental distress resulting from the loss of a beloved sister, and obtaining her signature to said deed by misrepresenting to plaintiff the nature and effect of the instrument which she executed. In truth and in fact, *defendants,* and each of them, represented to plaintiff that the instrument to which they *obtained her signature, by undue influence,* was not, in fact, a deed to her property as more fully described hereinabove." (Par. IV.)

"At the aforesaid time and place, *defendants,* and each of them, fully *intended* by their misrepresentations, and *by their undue influence,* and by duress, to deceive plaintiff, and induce her reliance on their misrepresentations, so as *to unlawfully obtain her signature* to the aforesaid 'GIFT DEED.' " (Par. VI.)

"At the aforesaid time and place, *plaintiff,* as the result of her great age, which is in excess of eighty (80) years, her bereavement and great mental distress resulting from the loss of her beloved sister, and *due to the undue influence,* fraudulent misrepresentations, and deceit of the defendants, *relied on* their said *misrepresentations* as to the nature and effect of the instrument which she allegedly executed." (Par. VII.)

"*As a result of the aforesaid* intentional misrepresentations, fraud, *undue influence,* and deceit, exercised by defendants, and each of them, against plaintiff, as aforesaid; *plaintiff suffered* the *loss* of her fee simple interest in the aforesaid property located at 87 States Street, and further suffered great mental and physical distress." (Par. VIII.) (Italics added.)

record likewise fails to indicate that but for the counsel's remarks a different result would have been probable.

■ *Instruction Errors:* Turning to appellants' last argument, we are in full agreement that the jury was erroneously instructed with regard to the compensatory damages, and entertain no doubt that under the record here present the award of $2,500 compensatory damages cannot be upheld.

As a preliminary matter, we observe that the same wrongful act may constitute both a breach of contract with the resultant contractual remedy of rescission and an invasion of an interest protected by the law of torts calling for tort remedies (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 3, p. 2305; 2 Witkin, Cal. Procedure (2d ed.) § 89, p. 959). The undue influence here charged and found by the jury unquestionably possesses a double feature. While it has been frequently said that undue influence is a species of constructive fraud (*Faulkner* v. *Beatty, supra; Stewart* v. *Marvin, supra;* cf. § 1573), the redress provided by law is a contractual one, namely, rescission pursuant to section 1688 et seq. However, regardless of whether damages for undue influence are being sought under sections 1692 or 3343,[5] one conclusion is crystal clear: no

---

[5]Section 1692 provides that "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint.

"If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances.

"*A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits,* if any, conferred by him as a result of the transaction *and any consequential damages to which he is entitled;* but such relief shall not include duplicate or inconsistent items of recovery.

"If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (Italics added.)

Section 3343 sets out in pertinent part that "(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with *any additional damage* arising from the particular transaction, including any of the following:

"(1) Amounts actually and reasonably expended in reliance upon the fraud.

"(2) An amount which would compensate the defrauded party for loss of use and

damages may be awarded for pain and mental suffering under either section.[6] ■ Although section 1692, enacted in 1961, allows *consequential* damages in addition to rescission of a contract, it does not alter the invariable rule pronounced by a legion of cases that damages are not recoverable for mental suffering or injury to reputation resulting from breach of contract (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 400 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Westwater* v. *Grace Church* (1903) 140 Cal. 339, 342 [73 P. 1055]; *Walpole* v. *Prefab Mfg. Co.* (1951) 103 Cal.App.2d 472, 489 [230 P.2d 36]; 1 Witkin, Summary of Cal. Law (8th ed.) § 651, pp. 553-554). ■ It is likewise settled beyond dispute that under section 3343 the measure of damages for the fraudulent purchase, sale or exchange of property is the out-of-pocket loss of the defrauded party (*Garrett* v. *Perry* (1959) 53 Cal.2d 178 [346 P.2d 758]; *Goren* v. *Griffin* (1957) 152 Cal.App.2d 35 [312 P.2d 743]), and mental distress is not an element of damages for fraud under that section (*Sierra Nat. Bank* v. *Brown* (1971) 18 Cal.App.3d 98, 103 [95 Cal.Rptr. 742]; see also *Ruby* v. *Debovsky* (1954) 126 Cal.App.2d 21 [271 P.2d 983]; *Greitzer* v. *United States National Bank* (S.D.Cal. 1971) 326 F.Supp. 762, 766). As emphasized in the cases, the right to recover "additional damages" does not refer to the measure of damages, but rather to such matters as expenses and other consequential damages stemming from the fraud (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744 [192 P.2d 935]). Likewise, contrary to respondent's position, the phrase "any legal and equitable remedies" does not pertain to the measure of damages and does not include recovery for pain and suffering, but rather preserves such other remedies as the right to rescind or the right to recover on a warranty theory (*McNeill* v. *Bredberg* (1961) 192 Cal.App.2d 458 [13 Cal.Rptr. 580]; *Mercantile Acceptance Corp.* v. *Globe Indem. Co.* (1962) 210 Cal.App.2d 636 [27 Cal.Rptr. 75]).

---

enjoyment of the property to the extent that any such loss was proximately caused by the fraud.

"(3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it. . . .

"(b) Nothing in this section shall do either of the following:

"(1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

"(2) Deny to any person having a cause of action for fraud or deceit *any legal or equitable remedies* to which such person may be entitled." (Italics added.)

[6]Counsel for respondent conceded at oral argument that he could find no decisional authority to support the contention that damages for pain and suffering are recoverable as a form of consequential damages to rescission based on undue influence.

When viewed under the foregoing principles, it becomes evident that the repeated instructions[7] to the jury that as a part of general damages respondent was entitled to recovery for pain, discomfort, fears, anxiety and other mental and emotional distress were clearly erroneous. But in addition, it is also manifest that the instructions in question resulted in an undeniable prejudice to appellants. The record as a whole unmistakably demonstrates that but for pain and mental suffering the compensatory damages awarded to respondent are entirely unsupported by evidence. Although respondent introduced testimony with regard to the value of the property and its rental value, there is no proof whatsoever that respondent was at any time deprived of the use and enjoyment of her property and/or that she wished to rent or encumber the same. It is, of course, well recognized that the plaintiff is required to have sustained *actual* damages from the particular injury of which he complains before he can be compensated for its infliction (*Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821 [278 P.2d 91]). As we pointed out in *Ventura County Humane Society* v. *Holloway* (1974) 40 Cal.App.3d 897, 907 [115 Cal.Rptr. 464]: "damages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable."

The remaining contentions of the parties deserve just brief consideration. Respondent's insistence that the punitive damages should be reinstituted cannot stand for two main reasons. One, in order to award punitive damages under section 3294,[8] the party must be culpable of

---

[7]The pertinent instructions read as follows: "Now, *a plaintiff who loses his* or her *property* as a result of the defendants tortious conduct *and suffers mental distress may recover not only for the pecuniary loss, but also for his mental distress.*

"Now, if under the Court's instructions, you find that plaintiff is entitled to a verdict against the defendants, you must then award plaintiff damages in an amount that will reasonably compensate her for each of the following elements of claimed loss or harm, provided that you find it was or will be suffered by her and was proximately caused by the act or omission upon which you base your finding of liability.

"*It should include reasonable compensation for any pain, discomfort, fears, anxiety and other mental and emotional distress suffered by the plaintiff* and of which her injury was a proximate cause."

"No definite standard is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation.

"Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. *In making an award for pain and suffering you shall exercise* your authority with calm and *reasonable judgment* and *the damages you fix shall be just and reasonable* in the light of the evidence." (Italics added.)

[8]Section 3294 provides that "In an action for the breach of an obligation not arising from contract, *where the defendant has been guilty of oppression, fraud or malice,* express

fraud, oppression or malice in fact, that is, there must be an intent to vex, annoy or injure (*Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891 [99 Cal.Rptr. 706]; see also: *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490, 498-499 [35 Cal.Rptr. 317]; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 526-527 [322 P.2d 933]). In the instant case the special verdict of the jury found appellants not guilty of fraud, oppression or malice. Two, it is hornbook law that exemplary or punitive damages may not be awarded in the absence of actual or compensatory damages (*Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.* (1957) 48 Cal.2d 71, 77 [307 P.2d 626]; *Kluge* v. *O'Gara* (1964) 227 Cal.App.2d 207, 209 [38 Cal.Rptr. 607]; 14 Cal.Jur.2d, § 184, pp. 815-816). As we concluded above, respondent suffered no actual or compensatory damages and therefore is not entitled to punitive damages, either.

 Appellants' final argument that they should be reimbursed for the amounts paid for taxes cannot be sustained. The record at hand reveals that appellants failed to plead restitution for the taxes expended and failed to introduce adequate evidence from which the amount of expenditures could be determined. Since the issue of restitution was not pleaded, proved and/or argued in the lower court, it constitutes a matter outside the record which cannot be considered on appeal.

The judgment is modified by deleting the provision awarding $2,500 compensatory damages. As so modified, and in all other respects, the judgment is affirmed. Respondent is awarded costs on appeal.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 7, 1975, and the judgment was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied May 1, 1975.

---

or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Italics added.)