[Civ. No. 27103. First Dist., Div. Three. June 15, 1971.]

SIERRA NATIONAL BANK, Plaintiff and Appellant, v. HAROLD BROWN et al., Defendants and Respondents.

---

---

## COUNSEL

Girvan Peck, Alexander B. Aikman, Morrison, Foerster, Holloway, Clinton & Clark and Henry J. Soldati for Plaintiff and Appellant.

George E. Dilley for Defendants and Respondents.

---

## OPINION

**CALDECOTT, J.**—Appellant, Sierra National Bank, commenced this action against respondents, Harold Brown and his wife Florence C. Brown, for money due on a promissory note. The Browns cross-complained, alleging fraud and claiming damages for mental distress. The trial resulted in a jury verdict in favor of the Browns on the cross-complaint and impliedly against appellant on its complaint. The appeal is from the judgment.

Kenneth Hudson was a vice-president of the Sierra National Bank and the manager of its Sebastopol branch. One afternoon in the middle of January 1966, Hudson and a Max Gurth went out to the Browns' farm. They found Mr. Brown and his sons out in the field. Hudson introduced himself as president of the bank and Gurth as president of the Washington Wholesale Brokers. Hudson indicated Gurth might be able to get the Browns a "good deal" on a mobile home. It was decided there should be a second meeting, because Mrs. Brown, who handled most of the family business matters, was then in the hospital.

One evening at the end of January, or the first part of February 1966, Hudson and Gurth returned to the Browns' home. Hudson was again introduced as president of the bank and Gurth as president of the Washington Wholesale Brokers. Mrs. Brown climbed out of her recovery bed to meet the two visitors.

At this meeting, the decisions as to the type of mobile home desired, and the number of extras desired, were made. Concurrently, the price and financing arrangements were agreed upon. Although Gurth took no notes whatsoever on the negotiations, both Hudson and Mrs. Brown did. A delivery date of March 15, 1966, was agreed upon, after which Mr.

and Mrs. Brown signed a number of business forms in blank. At this meeting the Browns also executed a conditional sales agreement.

The forms signed in blank were typed and dated April 1, 1966. The forms included a promissory note and a security agreement. The agreement identified the mobile home by serial number 4880. The terms of the note varied from the terms agreed upon at the second meeting: the note was for a six-year term, rather than seven, payable at the rate of $116 per month, rather than $96 per month.

The bank then sent a payment book to the Browns, which indicated that payments were to commence in May 1966. Because the mobile home had not yet been delivered, the Browns objected to making any payments. Apparently Hudson allowed delayed payment, for the Browns did not make their first payment until August 1966. Gurth made a payment on the loan in July 1966.

The mobile home was delivered in June 1966. It did not meet the specifications previously agreed upon, was a different model, serial number 4720, and was damaged. The Browns refused to accept delivery and notified Hudson of the situation.

The mobile home was parked on property owned by neighbors of the Browns. After almost two weeks of effort to have the bank take back the home, and after the bank told them it would cost them $491 to have it towed away, the Browns paid a neighbor to tow the home onto their property. The Browns soon moved into the mobile home, but only because they had to vacate their house. Someone did come out to make minor repairs, but he told the Browns the home would have to be returned to the factory to be repaired properly.

Hudson was relieved as manager of the Sebastopol branch on or about July 1, 1966. His last day of duty was on or about July 15, 1966. There is a conflict in the evidence as to the nature of his departure. The president of the bank, Henry F. Luehring, testified Hudson left to take a better job. Hudson testified he did not have another job at the time of his discharge.

Shortly after Hudson's departure, Mrs. Brown met with Pearson, Hudson's replacement. She informed Pearson of the situation, including her frail health, and asked to see the note, the security agreement, and the conditional sales agreement. Pearson refused to produce the documents. He also refused to do anything about the damaged mobile home. He insisted on repayment of the note, and he urged Mrs. Brown to refinance the loan through another bank. Pearson refused to consider Mrs. Brown's complaints, and he threatened to seize the Browns' ranch if the note was

not paid. After this meeting, Pearson submitted a report on the matter to Luehring and the bank's board of directors.

Mrs. Brown next met with Luehring. Essentially, the same information and demands were presented to him as had been presented to Pearson. Luehring was totally uncooperative and, like Pearson, he threatened to seize the ranch if the note went unpaid.

At this point, the situation overwhelmed Mrs. Brown. She suffered a nervous collapse and was confined to bed for a week. She continued to suffer severe headaches, until the second day of trial.

The Browns, under objection, then made seven payments on the note, i.e., for August 1966, through February 1967. During this period the bank insisted the Browns were behind in their payments, referring to the prior due payments for May and June 1966, which Hudson had apparently delayed.

Sometime in January 1967, a collector from the bank visited the Browns' farm and spoke to Mrs. Brown for two hours, while Mr. Brown was away. Mrs. Brown again explained the situation, including the nature of her health, but the collector's response was that he "couldn't care less." He refused to listen to her "tale of woe" and he said he would collect the money due, even if the ranch had to be seized. This visit precipitated another breakdown and period of confinement to bed. Shortly thereafter, the Browns went to their attorney, who advised them to make no further payments.

In the latter part of February 1967, the bank sent a demand letter to the Browns. Soon thereafter, the bank turned the matter over to Mr. Soldati, who sent a routine letter to the Browns, offering a conference to discuss the matter, stating suit would be filed in the alternative. After a request by Mrs. Brown to examine the note, the security agreement, and the conditional sales agreement had been denied, Mrs. Brown wrote Mr. Soldati, saying a conference would be fruitless and that the matter should be settled in court.

The cross-complaint alleges three causes of action. The first cause of action sounds in fraud, asks for damages for the trailer and for rescission of the promissory note. The second cause of action alleges fraud, asks damages for distress and nervousness *as a result of the fraud* and apparently seeks exemplary damages. The third cause of action alleges negligence and malice and asks exemplary damages.

The pretrial conference order states the nature of the case to be, "This is an action for money due on a promissory note and for adjudica-

tion of the rights of the parties in and to a certain 1966 Kit Fairview Mobile Home by reason of a certain security agreement." The issues are listed in the order as: "1. Promissory estoppel 2. Rescission 3. Negligence." No mention was made of fraud, outrageous conduct causing emotional distress, or punitive damages.

The respondents offered an instruction on punitive damages, which was refused by the court on the ground that punitive damages were "not an issue." No instructions were given the jury on negligence, and apparently the third cause of action was either dropped or there was insufficient evidence offered to justify an instruction. Negligence is not raised as an issue on the appeal. The jury returned a single verdict for the respondents and assessed "damages at the sum of $12,500."

The verdict could not be based on the first cause of action alone, for the prayer does not seek the amount awarded and respondents do not claim that it is compensation due under the first cause of action. The jury received no instructions on the third cause of action so could not return a verdict, in any way, based on it. The second cause of action alleges, "defendant FLORENCE C. BROWN did *become as a result of the fraud practiced upon her* by the said KENNETH HUDSON, become upset, distressed and required the services of a doctor and that the said condition has impaired her health permanently resulting in a condition of great nervousness and great apprehension to her damages in the sum of $50,000.00." (Italics added.)

The law is clear that mental distress is not an element of damages for fraud under Civil Code section 3343 (see *Ruby* v. *Debovsky,* 126 Cal.App.2d 21 [271 P.2d 983]), but in an appropriate case punitive damages may be allowed. If punitive damages are to be allowed, there must be the necessary allegations in the complaint, they must be listed in the pretrial conference order, the evidence offered must support them, and the verdict should assess compensatory damages and punitive damages separately to show compensatory damages have been awarded.

Here respondents apparently realized they could not recover damages for mental suffering in a fraud case and tried to allege punitive damages in the complaint. The pretrial conference order did not mention punitive damages. Respondents offered an instruction on punitive damages which was refused by the court as not an issue, and the issue of intentional infliction of emotional distress was then apparently raised.

With this confused state of the case, the court then had the difficult task of instructing the jury. The instructions ran into several difficulties. The court instructed on the issues of fraud and intentional infliction of

emotional distress. The court gave BAJI No. 104 instruction on proximate cause, but no further information on this issue.

The court instructed, "The cross-complainants Harold and Florence Brown has [*sic*] the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: (1) Fraud on the part of Sierra National Bank (2) Ratification (3) Conduct causing emotional distress (4) Proximate cause (5) Nature and extent of emotional distress (6) Nature and extent of their damages." If the proximate cause listed as an issue related to the emotional distress caused by the fraud, as alleged in the complaint, it was error. Whether the jury based their verdict on this error we do not know.

The court further instructed, "The items of damage which you may consider are . . . such sums as will reasonably compensate cross-complainant Florence Brown for such mental distress and suffering, if any, proximately resulting from the conduct of cross-defendant on which you base your finding of liability." Again it cannot be determined whether the conduct of cross-defendant, upon which the jury based its finding of liability, was fraud or intentional infliction of emotional distress.

Finally, the court adapted BAJI No. 171-C[1] by substituting the word "conduct" where the word "negligence" appears in the instruction. The BAJI instruction properly speaks of negligence which proximately causes injury. The instruction, however, as modified and given merely speaks of conduct that proximately causes injury, without limiting it to illegal or wrongful conduct, and as such is error.

These errors require reversal. For the guidance of the court we now discuss the issue of degree of proof that may arise upon a retrial.

■ Appellant concedes that the court properly instructed the jury that fraud must be proved by a preponderance of the evidence. Appellant maintains, however, that the court erred in refusing appellant's instruction "that since fraud imputes venality and corruption to the person charged, it should be clearly proved and satisfactorily established before it should be given any consideration or value by the jury."

As stated in 23 Cal.Jur.2d 207 (§ 83): "Courts have used a variety of expressions in characterizing the sufficiency of evidence to establish

---

[1]BAJI 171-C reads as follows: "If you should find that cross-complainant suffers from some unfortunate condition which has not been proximately caused by any negligence on cross-defendant's part, you may not assess any damages for that condition against cross-defendant. However, if negligence on cross-defendant's part has been a proximate cause of aggravating a previously existing disability suffered by said cross-complainant, that effect should be considered by you in fixing damages, if your decision on the question of liability is in favor of cross-complainant."

fraud. Thus, it has been variously stated that the evidence, or the inferences to be drawn therefrom, must be clear; clear and satisfactory; clear and convincing; clear, convincing, and satisfactory; clear, convincing, and unequivocal; clear, satisfactory, and conclusive; full and complete; and strong and decisive. A mere suspicion of fraud is never sufficient. Consequently, when the plaintiff's case goes no further than to establish a state of facts from which the inference of fraud may or may not reasonably be drawn, plaintiff fails to establish his charge." (Fns. and citations omitted.)

The burden of proof, however, required in a fraud case is no more than a preponderance of the evidence. Appellant cites *K. King and G. Shuler Corp.* v. *King,* 259 Cal.App.2d 383 at p. 396 [66 Cal.Rptr. 330], in which the court stated, "He who alleges fraud has the burden of proving it at the trial level by clear and convincing evidence," citing a number of Court of Appeal cases in support of the statement. The court further stated in footnote 6, "The cloud which hung over this rule stemming from *Edmonds* v. *Wilcox* (1918) 178 Cal. 222, 224-225 [172 P. 1101], has been clarified by Evidence Code, sections 520 and 115 superseding Code of Civil Procedure, section 1963, subdivision 1 and section 2061, subdivision 5, and is informative in ascertaining the proper rule to be applied even though this case was tried prior to January 1, 1967." Evidence Code section 520 provides, "Claim that person guilty of crime or wrongdoing. The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue." Evidence Code section 115 provides, " 'Burden of proof.' 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

We do not interpret these code sections as requiring "clear and convincing" as the degree of proof in a fraud case. The two Evidence Code sections merely provide the various degrees of proof in civil cases and that, unless otherwise provided by law, a preponderance of the evidence will suffice.

In the latest expression of the Supreme Court that we were able to find concerning the degree of proof required in a fraud case, *Divani* v. *Donovan* (1931) 214 Cal. 447 at pp. 452-453 [6 P.2d 247], the court

stated, "It is exclusively the function of the trial court to determine whether the evidence tending to prove fraud outweighs or preponderates the evidence of the defendants. (*Noll* v. *Baida*, 202 Cal. 98, 101 [259 Pac. 433].)" In the earlier case of *Edmonds* v. *Wilcox*, cited in the footnote to *King*, the court stated, "The court instructed the jury that the case must be decided according to the preponderance of the evidence. This is correct." In *Bullard* v. *His Creditors*, 56 Cal. 600, 605, the court held that a mere preponderance of the evidence will justify a verdict of guilty of fraud in a civil case.

As previously stated, Evidence Code section 115 provides, in part, that except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence. Evidence Code section 160 defines "law" as including constitutional, statutory and decisional law. Naturally we are obliged to follow the decisional law of the Supreme Court of this state. (*Auto Equity Sales, Inc.* v. *Superior Court*, 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The Supreme Court has clearly stated, in *Divani, Noll, Edmonds* and *Bullard*[2] that a preponderance of the evidence is the degree of proof required in a fraud case.

In the present case, the court used BAJI No. 21 (1967 Rev.) to instruct the jury. The language requested by appellant would be helpful to the jury in understanding the seriousness of the charge of fraud, but the failure to include it was not error. BAJI No. 21 (1967 Rev.) is proper in a fraud case.

Since the judgment must be reversed, and it is unlikely that the other errors complained of will be repeated upon a retrial of the case, it is unnecessary to discuss them here.

The judgment is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.

---

[2]These cases were decided prior to the adoption of the Evidence Code, but the Evidence Code does not make any change in the degree of proof required in fraud cases.