[No. D012751. Fourth Dist., Div. One. May 14, 1992.]

W. ANDREW BRANCH, Plaintiff and Respondent, v.
HOMEFED BANK, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Littler, Mendelson, Fastiff & Tichy and Gregg C. Sindici for Defendant and Appellant.

Georgiou & Tosdal and Ann M. Smith for Plaintiff and Respondent.

OPINION

**FROEHLICH, J.**—Homefed Bank, formerly Home Federal Savings and Loan Association (Bank) appeals from a judgment, entered on special verdicts, in favor of W. Andrew Branch (employee). The jury found in favor of

employee on his cause of action against Bank for negligent misrepresentation, and awarded economic damages of $45,163 and emotional distress damages of $60,000.

Bank raises numerous contentions, which essentially resolve into three claims: (1) the judgment was unsupported by the evidence; (2) the judgment is barred by the ruling in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]; and (3) the award of emotional distress damages was error.

I. *Factual Background*

The evidence, viewed in the light most favorable to the prevailing party, reflects that employee was induced to leave his former employment and accept a job with Bank based on representations by Mr. Nichols, an officer of Bank, regarding the economic benefits employee would reap if he accepted Bank's employment offer. During their initial meeting, Nichols told employee that employee would receive a "signing bonus" of $5,000; Bank would pay medical benefits; and employee's earnings would increase with bonuses (for certain types of important projects) and outside consulting fees. Nichols also represented that Bank would take care of certain medical bills for employee's twins; it would handle employee's relocation expenses; and it would provide employee a free place to live for the first two or three months.

In a phone conversation later that day, Nichols advised employee that his salary would be in the low to mid $50,000's. Employee countered with a salary request in the low to mid $60,000's. Nichols reassured employee that the lower base salary would be more than compensated by the free medical benefits (not provided by employee's former employer), the signing and project bonuses, consulting fees, and regular salary increases.

A week to 10 days later, Nichols told employee the starting salary would be $52,000. When employee balked, considering he and his wife were then making a combined $67,000 in Los Angeles, and the move to Bank would forfeit the wife's job, Nichols reiterated the medical benefits (worth $5,000), the bonuses and consulting fees, etc., telling employee it was obvious he would be making a great deal more than the base salary. Employee accepted the offer. Nichols told employee he would receive a letter confirming the salary offer. Employee submitted his resignation within a day following this last phone conversation.

As promised by Nichols, Bank arranged and paid for movers to pack and transport employee's belongings to San Diego. However, the letter confirming the salary offer did not arrive until the day employee was leaving Los

Angeles, after the movers had already departed with employee's belongings. Employee noticed the letter contained information different from the agreement he had structured with Nichols. It omitted discussion of medical benefits and payment of his twins' medical expenses, omitted discussion of project bonuses and consulting fees, and changed the characterization of the $5,000 signing bonus to an "interest free loan." These discrepancies, however, did not concern employee, because the letter was not signed by Nichols, who employee believed was authorized to hire him, but by a person who had not been party to the negotiations. Since employee had previously worked with Nichols, had known Nichols to be a man who accomplished his goals, and had seen many of Nichols's promises to him being fulfilled (such as providing the movers and relocation "allowance" and a rent-free condominium on his arrival in San Diego), employee did not worry about the discrepancies between Nichols's offer and the salary confirmation letter.

During the first year of employment, employee's job performance was rated as "above average" by Bank. He assisted Bank in implementing projects which saved Bank millions of dollars. However, employee did not receive either the interim salary raises promised by Nichols or any bonuses for the projects he had successfully completed. Indeed, employee lost ground when Bank began deducting from his paycheck the costs of medical benefits previously paid by Bank.

After his first year at Bank, employee asked for some time off because of a medical condition. Nichols assured employee his taking leave would not be a problem and that employee would not suffer economically from the leave. However, employee was later asked to sign, but refrained from signing, a form which indicated his job was not guaranteed on his return at the expiration of his leave. Also, employee received a "short" paycheck for the first pay period of his absence. At this point, employee decided to raise with Nichols the unkept promises of salary increases and bonuses.

Following two meetings with Nichols which resolved nothing, Nichols orally proposed a 4 percent retroactive increase in salary, and stated he was willing to "consider" bonuses on item processing once all phases were completed. However, he prefaced his offer with a warning to employee: "I am going to give you this oral proposal, and if you come back and stick this in my a—, I am going to kill you." Employee rejected that offer, telling Nichols it was merely another promise to "consider" bonuses. Employee told Nichols he intended to take advantage of the Bank's "talk-it-up" program by raising the issue with Nichols's superior.

Employee approached upper management, seeking what he believed was owed him under the agreement, but his appeal was unavailing. Retaliation

followed. Employee's next evaluation criticized his performance. Shortly thereafter, on Nichols's orders, employee was not allowed to contact clients with whom he had been working; neither Nichols nor employee's immediate supervisor (a golfing friend of Nichols) would speak to him; he was isolated from his coworkers, who were warned not to socialize with him during business hours; he was stripped of his managerial role and assigned "busy work"; and he was placed in a cubicle, without a phone or even a trash can, and told to stay there and remain silent. This harassment, and the strain caused thereby, led to his resignation in the late spring of 1986.

II. *Procedural Background*

Employee sued Bank, pleading numerous causes of action, including breach of contract, wrongful termination (both in tort and contract), violation of Labor Code section 970, intentional infliction of emotional distress, and intentional and negligent misrepresentation. After a series of motions brought by Bank, both before and during trial, the claims finally submitted to the jury rested on two theories only: negligent misrepresentation and termination in violation of public policy.[2] The jury found only the former to be true. It awarded employee $45,163 in economic damages and $60,000 in emotional distress damages.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. *Damages for Emotional Distress Are Not Recoverable Where Negligent Misrepresentation Causes Only Economic Injury*

Having found sufficient evidence to sustain the jury verdict of negligent misrepresentation, we address Bank's contention that the evidence does not support the damage award.[5] Based upon the discussion contained in part III, *ante*, we have no hesitancy in sustaining the award of compensatory

[2]This claim was based on employee's assertion that he was subjected to the harassment in part because he had refused Bank's request to provide perjured testimony in an unemployment compensation proceeding brought by a former employee.

*See footnote, *ante*, page 793.

[5]Because we reverse the award of damages for emotional distress on other grounds, we do not reach the issue of the exclusive remedy of workers' compensation. *Spratley* v. *Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408 [234 Cal.Rptr. 121] held that emotional distress suffered as the result of alleged fraud in the employer's inducement of employee's acceptance of the job was exclusively compensable under workers' compensation. The *Spratley* court, rejecting employee's argument that the tort injury occurred before the employment relationship began, reasoned the employee first sustained injury resulting from the fraud during the employment relationship, and hence classified the injury as one arising in the

damages. We conclude, however, that the award of damages for emotional distress must be reversed. We restate that which we believe to be settled law, namely that damages for emotional distress are ordinarily not recoverable in an action for negligent misrepresentation when the injury other than the emotional distress is only economic.

Employee acknowledges the existence of a great many cases which state the broad rule that damages for emotional distress cannot be recovered in an action based on fraud.[6] He contends, however, that these cases are properly limited to fraud in the purchase, sale or exchange of property, urging that damage recovery resulting from other types of fraud is not so limited. Employee relies principally on *Sprague* v. *Frank J. Sanders Lincoln Mercury, Inc.* (1981) 120 Cal.App.3d 412 [174 Cal.Rptr. 608].

Employee's argument is based upon an analysis of the difference between damages purportedly recoverable under Civil Code[7] sections 1709 and 3333 and the damage recovery permitted by section 3343. Section 3343 delineates in detail the damages recoverable for fraud in property transactions, and does not include a provision for recovery of damages for emotional distress. (See *O'Neil* v. *Spillane*, *supra*, 45 Cal.App.3d at p. 159.) Section 1710 deals specifically with the tort of deceit, defining it in terms of both intentional and negligent misrepresentation. Section 3333 then provides broadly that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby. . . ."

Since section 3343 specifically relates to fraud in property transactions, and sets detailed limits on damages, employee argues it constitutes one of the measures of damage "otherwise expressly provided" in the code, and therefore is an exception to the broad measure of damages contained in section 3333. Hence, it is contended, when the fraud does not relate to the purchase or sale of property, as is the case here, the limitation of damages to economic loss is inapplicable.

---

course of employment. Were we to reach the workers' compensation issue in this case we presumably would follow *Spratley*, because employee's injuries in terms of emotional distress, as in *Spratley*, occurred during the course of employment. Employee's general damages, of course, are not within the ambit of workers' compensation in that they are economic rather than personal injury damages.

[6]A typical statement of the rule is that "mental distress is not an element of damages for fraud." (*Sierra Nat. Bank* v. *Brown* (1971) 18 Cal.App.3d 98, 103 [95 Cal.Rptr. 742]; and see also *Newman* v. *Smith* (1988) 77 Cal. 22 [18 P. 791]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147 [119 Cal.Rptr. 245]; *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548 [206 Cal.Rptr. 641]; *Adriana Intern. Corp.* v. *Thoeren* (9th Cir. 1990) 913 F.2d 1406.)

[7]All statutory references are to the Civil Code unless otherwise specified.

The literal holding of *Sprague* supports this thesis. The fraud in *Sprague* consisted of misrepresentations in connection with the repair of an automobile. The trial court had excluded evidence of damage for mental distress and suffering. Distinguishing cases of generalized deceit from cases involving fraud in the purchase and sale of property, the appellate court reversed, holding: "general damages for mental pain and suffering are recoverable in a tort action of deceit. . . ." (*Sprague* v. *Frank J. Sanders Lincoln Mercury, Inc., supra,* 120 Cal.App.3d at p. 417.)

The difficulty with use of *Sprague* as authority in this case is that *Sprague* involved an intentional tort (fraud in terms of intentional misrepresentations). The court in *Sprague* discussed recoverability of damages for emotional distress in the generality of "a tort action of deceit," without distinguishing between intentional and negligent fraud. (*Sprague* v. *Frank J. Sanders Lincoln Mercury, Inc., supra,* 120 Cal.App.3d at p. 417.) Employee continues this trend of logic by citing section 1710 as defining "deceit" in terms of both intentional and negligent misrepresentation, and ipso facto concludes that *Sprague* is authority for recovery of mental distress damages in a negligent misrepresentation case.

The inclusion of both negligent and intentional misrepresentation in the definition of "deceit" does not signal a uniformity in the availability of damages for the two torts. To assure ourselves of this principle we need look no further than the concept of punitive damages. Although punitive damages by definition are recoverable for the tort of "deceit" (§ 3294, subd. (c)(3)), it has been uniformly held that punitive damages are not recoverable in that branch of "deceit" which is mere negligence. (*Delos* v. *Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 656 [155 Cal.Rptr. 843]; *Reid* v. *Moskovitz* (1989) 208 Cal.App.3d 29, 32 [255 Cal.Rptr. 910].)

In our view, then, the critical analysis is the determination that the tort is either intentional or negligent, rather than the selection of the simple definitional label of the misrepresentation as "deceit." We agree that in cases of intentional misrepresentation recovery for emotional distress need not be accompanied by physical injury. This was the case in *Sprague* and in most of the cases it relies upon as authority for granting damages for emotional distress. (See, e.g., *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal.Rptr. 565] [intentional fraud and bad faith in the repair and restoration of plaintiffs' furniture]; *Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921 [114 Cal.Rptr. 622, 523 P.2d 662] [intentional tort—"malice, fraud and oppression"—in the loss and destruction of personal property by a moving company].)

Where, however, the misrepresentation is merely negligent, rather than intentional, we believe the recovery should match that available in negligence actions, generally. On this principle, employee here, incurring neither

physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, is entitled neither to punitive damages nor to a recovery for emotional distress. The general rule of damages permissible in negligence actions was set forth in *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815] as follows:

"Civil Code section 3333 provides that '[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' Although the statute does not preclude damages for emotional suffering as a consequence of tortious conduct, California courts have limited emotional suffering damages to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant. Damages for emotional suffering are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith." (*Id.* at p. 761.)

Recovery of emotional distress damages has been allowed, absent impact or physical injury, in certain specialized classes of cases. Where the negligence is of a type which will cause highly unusual as well as predictable emotional distress, recovery has been allowed. (*Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 215 [163 Cal.Rptr. 445] [mishandling of the cremated remains of plaintiff's brother]; *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 930 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] [negligent advice to patient that she suffered from syphilis, resulting in severe distress to her husband].) Recovery has also been allowed when the negligence arises in a situation involving breach of fiduciary or quasi-fiduciary duties, as in bad faith refusal to pay insurance proceeds. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470].) Of course we also have the *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912] potential of recovery of damages for mental distress through the witnessing of an injury to a close relative (clarified and limited in *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814]).

Our employee's case fits into none of these exceptions to the general rule. Employee suffered no physical impact which caused injury. The claim arose from a rather typical negotiation for employment in a very prosaic business setting—a bank. While damage as the result of employee's reliance on Bank's negligent misrepresentations could be anticipated, nothing in the case suggests the peculiarly sensitive emotional trauma foreseeable in such cases as *Allen* v. *Jones* or *Molien*. While blameworthy, the

Bank's conduct in no sense can be described as "extreme" or "outrageous," in terms of the conduct resulting in special damages in the insurance cases such as *Gruenberg.*

In sum, this was a case in which plaintiff's direct loss resulting from the negligent conduct of the defendant was economic. The consequential injury resulting from economic loss in terms of emotional distress is not compensable. Recovery for worry, distress and unhappiness as the result of damage to property, loss of a job or loss of money is not permitted when the defendant's conduct is merely negligent. As has been stated elsewhere, "emotional distress is but 'part of the human condition.' " (*Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 169 [136 Cal.Rptr. 275.) Loss by anyone of property or money, and certainly loss of expected wages, will normally produce mental anguish. " 'Complete emotional tranquillity is seldom attainable in this world . . .' " (*Ibid.,* quoted in *Quezada* v. *Hart, supra,* 67 Cal.App.3d at p. 762), and especially will be found absent when one has been misled by negligent representations. Recovery for the inevitable distress resulting from finding oneself the victim of a negligent tortfeasor is, however, limited to economic loss unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance, can be shown.[8]

---

Bank's conduct in no sense can be described as "extreme" or "outrageous," in terms of the conduct resulting in special damages in the insurance cases such as *Gruenberg.*

In sum, this was a case in which plaintiff's direct loss resulting from the negligent conduct of the defendant was economic. The consequential injury resulting from economic loss in terms of emotional distress is not compensable. Recovery for worry, distress and unhappiness as the result of damage to property, loss of a job or loss of money is not permitted when the defendant's conduct is merely negligent. As has been stated elsewhere, "emotional distress is but 'part of the human condition.' " (*Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 169 [136 Cal.Rptr. 275.) Loss by anyone of property or money, and certainly loss of expected wages, will normally produce mental anguish. " 'Complete emotional tranquillity is seldom attainable in this world . . .' " (*Ibid.,* quoted in *Quezada* v. *Hart, supra,* 67 Cal.App.3d at p. 762), and especially will be found absent when one has been misled by negligent representations. Recovery for the inevitable distress resulting from finding oneself the victim of a negligent tortfeasor is, however, limited to economic loss unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance, can be shown.[8]

## DISPOSITION

The award of emotional distress damages is reversed; in all other respects the judgment is affirmed. Plaintiff and respondent is entitled to costs.

Kremer, P. J., and Huffman, J., concurred.

---

[8]We realize that in our discussion herein we have blurred the differences between negligent misrepresentation productive of emotional distress and the negligent infliction of emotional distress. Our treatment of the torts more or less in common is not the result of inadvertence. While definitionally they differ, in that the representational tort involves only communication while negligent infliction of distress can result from acts, the analysis of each in terms of permitting recovery of damage for emotional distress should be essentially the same. See, for instance, *Allen* v. *Jones, supra,* 104 Cal.App.3d 207, which examined recovery for emotional distress in terms of both fraud and negligent infliction without distinguishing between the two causes of action. Where the negligent misrepresentation arises from the unusual circumstance which permits emotional distress damage in negligent infliction cases (the insurance cases or the cases of foreseeability of peculiarly intense emotional distress, for instance) we would anticipate emotional distress damage would be recoverable to the same extent were the case characterized in terms of the negligent infliction of emotional injury. In most situations the facts probably could be characterized as either cause of action.