[No. B075237. Second Dist., Div. Four. Sept. 6, 1995.]

JOSEPH E. Dı LORETO, Plaintiff and Appellant, v.
BRIAN SHUMAKE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B through F of the Factual and Procedural Summary, and parts I through IX and XI of the Discussion.

## COUNSEL

Beckman & Gohen and Joel Beckman for Plaintiff and Appellant.

Brian Shumake, in pro. per., for Defendant and Appellant.

## OPINION

**EPSTEIN, Acting P. J.**—This is an action between two attorneys concerning attorney fees. The fees were earned by work under a contingent fee contract in a personal injury action in which Joseph E. Di Loreto represented Ann M. O'Neill. Defendant Brian Shumake assumed representation of Ms. O'Neill after Di Loreto secured a judgment in her favor. The trial court directed a verdict in favor of Di Loreto on his causes of action for conversion and intentional interference with prospective economic advantage. The jury returned a verdict in favor of Di Loreto on his cause of action for fraud, and awarded $50,000 in punitive damages. In posttrial orders the trial court reduced the punitive damage award to $30,000.

Shumake argues that the judgment should be reversed because: 1) the trial court exhibited prejudice against him; 2) the court improperly shifted plaintiff Di Loreto's burden of proof to him; 3) the trial court erred in entering the directed verdicts; 4) the trial court refused his instructions on fiduciary duty and attorney's lien procedures; 5) of errors in the trial court's ruling on the posttrial motions; 6) attorney fees based on the theory of tort of another should not have been awarded; and 7) a setoff under Code of Civil Procedure section 877 was improperly denied.

In his cross-appeal, Di Loreto argues: 1) the trial court was without authority to reduce the award of punitive damages on its own motion; 2) the punitive damages award was not excessive; 3) the trial court erred in limiting his cross-examination of Shumake regarding his declaration of net worth; 4) the trial court abused its discretion in awarding only a portion of the attorney fees sought; and 5) he should have been allowed to pursue damages for emotional distress.

In the published portion of this opinion, we hold that the trial court ruled correctly in refusing to include emotional distress among the damages which Di Loreto could recover on his cause of action for intentional interference with prospective economic advantage. In the unpublished portion of the opinion, we reject the claims of error presented by the parties.

### FACTUAL AND PROCEDURAL SUMMARY

#### A

On March 1, 1982, Ann M. O'Neill retained Di Loreto to represent her in a personal injury action against Commuter Bus Lines. They entered into a written retainer agreement. (See *Joseph E. Di Loreto Inc.* v. *O'Neill* (1991) 1 Cal.App.4th 149, 157-158 [1 Cal.Rptr.2d 636] (*Di Loreto I*).)[1] In July 1986, Di Loreto obtained a jury verdict for Ms. O'Neill against Commuter Bus Lines of $575,321.50, including prejudgment interest and costs. (*Id.* at p. 153.)

During the pendency of an appeal by Commuter Bus Lines, Ms. O'Neill's relationship with Di Loreto ended, and she retained a new attorney, Brian Shumake. Di Loreto filed and served a notice of lien for his fees on Shumake and on counsel for Commuter Bus Lines, Rick Manthei, on September 19, 1986. Ultimately, Shumake was successful in negotiating a full satisfaction

---

[1]As we shall explain in more detail below, Di Loreto obtained summary judgment against Ms. O'Neill in this action for fees. That judgment was affirmed in *Di Loreto I, supra,* 1 Cal.App.4th 149, a decision that is now law of the case. (See *Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 301-302 [253 Cal.Rptr. 97, 763 P.2d 948].) Following the decision in *Di Loreto I,* all fees and interest due to Di Loreto were paid.

of the judgment for Ms. O'Neill, with interest. The appeal filed by Commuter Bus Lines was dismissed. (See *Di Loreto I,* 1 Cal.App.4th at p. 154, fn. 2.) One payment of $75,000 was made on April 1, 1987, and a second payment of $558,000 was made on December 1, 1987. The two settlement checks were made payable to Shumake and Ms. O'Neill; Di Loreto's name was omitted. These drafts were deposited in a checking account on which either Shumake or O'Neill could draw funds. O'Neill withdrew the funds and Di Loreto received no payment of fees.

B-F*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

DISCUSSION

I-IX*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

X

*Emotional Distress Damages*

■   Di Loreto argues that the trial court erred in ruling that emotional distress damages were not available on his cause of action for intentional interference with prospective economic advantage. In pretrial proceedings, the trial court ruled: ". . . I don't understand the emotional distress action at all. This is really a business dispute and you are not entitled to emotional distress in a business dispute."

As we explain, emotional distress damages are not routinely recoverable for interference with prospective economic advantage or with contractual relations. Such damages are recoverable for such torts, if at all, in cases where the circumstances of the tortious act make it objectively reasonable that serious emotional distress will be suffered.

As Di Loreto points out, the standard jury instruction on damages for interference with prospective economic advantage provides for recovery of damages for emotional distress.[2] The comment to the BAJI instruction states that the instruction is derived from Restatement Second of Torts section 774A. This is the only other authority cited by Di Loreto in support of his

---

*See footnote, *ante,* page 35.

[2]BAJI No. 7.89 provides: "If you find that plaintiff is entitled to a verdict against defendant based upon the claim of . . . [interference with prospective economic advantage] . . . you must then award plaintiff damages in an amount that will reasonably compensate plaintiff for all loss or harm, providing that you find it was [or will be] suffered by plaintiff and caused by

emotional distress claim. Section 774A of the Restatement provides: "(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for [¶] . . . (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference."

The Supreme Court of Oregon examined the history of the emotional distress element of section 774A in *Mooney* v. *Johnson Cattle Co., Inc.* (1981) 291 Ore. 709 [634 P.2d 1333]. "The record of the adoption of this statement by the American Law Institute, however, reflects no great conviction that it is a 'restatement' of an established rule." (*Id.* at p. 714 [634 P.2d at p. 1335].) The court's footnote 6 provides: "The original Reporter, Dean Prosser, submitted the new § 774A in 1969 with the note: 'There is actually very little case law on subsection (1).' Restatement of Torts (Second), Tentative Draft No. 14 (1969) at 86. When the draft again came before the Institute in 1977, the subsequent Reporter, Dean John W. Wade, said with regard to damages for emotional distress from interference with contractual relations: [¶] 'I admit that when I first saw that, I felt rather surprised. Yet when I looked at the cases—they were mostly older cases, I must admit—there were a number of cases indicating that this could be true. I left it alone . . . but it is open before you, and if you want to eliminate that aspect, I am amenable.' There was a motion to eliminate damages for emotional distress from § 774(A) (c) as being 'too easily trumped up.' In response to a question as to the 'weight of authorities in the cases,' the Reporter replied that it was 'sort of hard to tell.' Justice Braucher of Massachusetts said that he was 'as much against damages for emotional distress in this case as in other cases' but saw no reason 'why this one is that much different.' The motion to strike damages for emotional distress from § 774A failed by a vote of 64-44. The American Law Institute, Proceedings, 54th Annual Meeting (1977) at 429-431." (*Id.* at p. 714 [634 P.2d at p. 1336].)

Our Supreme Court has identified the damage element of the tort of interference with prospective economic advantage as "economic harm to the plaintiff proximately caused by the acts of the defendant." (*Youst* v. *Longo* (1987) 43 Cal.3d 64, 71, fn. 6 [233 Cal.Rptr. 294, 729 P.2d 728]; see also *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126, fn. 2 [270 Cal.Rptr. 1, 791 P.2d 587].) But the court has not directly addressed the availability of emotional distress damages on this theory. We have found no California case awarding emotional distress damages for intentional interference with prospective economic advantage or the related tort of interference with contractual relations.

the defendant's conduct. The amount of such award shall include: [¶] 2. [Emotional distress] . . . ."

In a relatively early case, *Duff* v. *Engelberg* (1965) 237 Cal.App.2d 505 [47 Cal.Rptr. 114], the plaintiffs entered into a binding contract to purchase a home from the McCoys. Defendants Engelberg and Campbell did not want plaintiffs and their family, who were Black, to move into the neighborhood. The Engelbergs and the Campbells caused the McCoys to convey the property to the Campbells, breaching the contract with plaintiffs. Plaintiffs obtained specific performance against the McCoys and incidental damages to cover the higher rate of interest they were required to pay during the pending litigation. The court also awarded $1,000 in compensatory damages and $500 in punitive damages against the Engelbergs and the Campbells. (*Id.* at p. 507.)

Appellants argued that the Duffs had been made whole by specific performance and should not obtain additional damages against the other defendants. The *Duff* court concluded that plaintiffs were not limited to contract damages in their action for interference with contractual relations. Noting that the question was one of first impression, the court looked to Professor Prosser's discussion of the issue: " '. . . Although older cases sometimes held to the contrary, it is now agreed that the fact that there is an available action against the party who breaks the contract is no defense to the one who induces the breach, since the two are joint wrongdoers, and each is liable for the loss. Even a judgment in such an action, returned unsatisfied, is no defense. Where substantial loss has occurred, one line of cases tends to adopt the contract measure of damages, limiting recovery to those damages which were within the contemplation of the parties when the original contract was made. Another, apparently somewhat more uncertain of its ground, has applied a tort measure, but has limited the damages to those which are sufficiently "proximate," with some analogy to the rules as to negligent torts. A third, perhaps the most numerous, has treated the tort as an intentional one, and has allowed recovery for unforeseen expenses, as well as for mental suffering, damage to reputation, and punitive damages, by analogy to the cases of intentional injury to person or property. *In the light of the intent and the lack of justification necessary to the tort, this seems the most consistent result.* [Citations.] (Italics added.)' (Prosser, Torts (3d ed.) ch. 26, § 123, pp. 972-973.)" (237 Cal.App.2d at p. 508.)

The *Duff* court concluded: "We accept the rule last stated as being the proper one for the reasons quoted in italics." (237 Cal.App.2d at p. 508.) But the court noted that there was no showing as to the basis for the award of $1,000 in compensatory damages. (*Id.* at p. 509.) There is no indication in the opinion that the award was to compensate for emotional distress. The *Duff* opinion is not authority for the proposition that emotional distress damages are routinely recoverable in an action for intentional interference with prospective economic advantage.

"Damages for emotional distress have been permitted only where there is some means for assuring the validity of the claim. (*Molien* [v. *Kaiser Foundation Hospitals* (1980)] 27 Cal.3d [916,] 926-927 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) The case law reveals a diversity of circumstances in which recovery for emotional distress may be had. They are loosely linked in the sense that in each it could be said that a particular form of mental suffering naturally ensued from the acts constituting the invasion of another kind of protected interest. 'The commonest example . . . is probably where the plaintiff suffers personal injuries in addition to mental distress as a result of negligent or intentional misconduct by the defendant.' (*Crisci* [v. *Security Ins. Co.* (1967)] 66 Cal.2d [425,] 433 [58 Cal.Rptr. 13, 426 P.2d 173].) Pain and suffering is the natural concomitant of a personal injury. (*Capelouto* v. *Kaiser Foundation Hospitals* [1972] 7 Cal.3d 889 [103 Cal.Rptr. 856, 500 P.2d 880] [infant's pain and suffering incident to contagious illness].) '[I]n the case of many torts, such as assault, battery, false imprisonment, and defamation, mental suffering will frequently constitute the principal element of damages.' (*State Rubbish, etc. Assn.* v. *Siliznoff* [1952] 38 Cal.2d [330,] 338 [240 P.2d 282]; see also *Deevy* v. *Tassi* [1942] 21 Cal.2d 109 [130 P.2d 389] [assault and battery].) *Molien, supra*, 27 Cal.3d 916, found sufficient assurance of the validity of a claim of emotional distress in the nature of the cause of action for negligent misdiagnosis, predicated as it was upon a false imputation of syphilis, which by statute constitutes slander per se, an intentional tort. (*Id.*, at pp. 930-931.) *In torts involving extreme and outrageous intentional invasions of mental and emotional tranquillity, the outrageous conduct affords the necessary assurance of the validity of the claim.* (*Id.* at p. 927.) Recovery also has been sanctioned for emotional distress which could be said naturally to ensue from an act which invaded an interest protected by an established tort. (See, *Sloane* v. *Southern Cal. Ry. Co.* [1896] 111 Cal. 668 [44 P. 320] [humiliation from wrongful ejection from train]; *State Rubbish, etc. Assoc.* v. *Siliznoff, supra*, 38 Cal.2d 330 [intentional infliction of emotional distress]; *Crisci* v. *Security Ins. Co., supra*, 66 Cal.2d 425 [physical injuries and psychosis resulting from fall through opening]; see also *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294] [mental suffering occasioned for fear for safety of family caused by trespass]; *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 271 [288 P.2d 507] [discomfort and annoyance caused by nuisance]; *Herzog* v. *Grosso* (1953) 41 Cal.2d 219 [259 P.2d 429] [annoyance ensuing from trespass].)" (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 8-9 [4 Cal.Rptr.2d 87], italics added [no emotional distress damages for negligent legal malpractice]; see also discussion of limitations on emotional distress damages in *Branch* v. *Homefed Bank* (1992) 6 Cal.App.4th 793, 800 [8 Cal.Rptr.2d 182].)

No "extreme and outrageous" conduct was shown in this case. Through Shumake's actions, Di Loreto was forced to sue to recover the fee he had earned. This does not constitute the extreme or extraordinary circumstances which have been held to warrant the recovery of emotional distress damages in other cases. Di Loreto's loss was strictly economic. While this litigation was no doubt burdensome and unpleasant, it is not unusual that fee litigation may be a product of an attorney-client relationship. If emotional distress damages were recoverable in this case, it would be difficult to state an interference case in which they are not recoverable.

We agree with the *Branch* court's reasoning in concluding that not all mental anguish is compensable: " '[E]motional distress is but "part of the human condition.' " (*Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 169 [136 Cal.Rptr. 275].) Loss by anyone of property or money, and certainly loss of expected wages, will normally produce mental anguish. " ' "Complete emotional tranquillity is seldom attainable in this world . . ." ' [citations], . . ." (6 Cal.App.4th at p. 801.) The trial court properly precluded Di Loreto from pursuing emotional distress damages on his cause of action for intentional interference with prospective economic advantage.

## XI

### *Fiduciary Duty*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment by jury verdict and the trial court's posttrial orders are affirmed. Each party is to bear its costs on appeal.

Vogel (C. S.), J., and Hastings, J., concurred.

A petition for a rehearing was denied October 6, 1995, and the petition of appellant Brian Shumake for review by the Supreme Court was denied January 4, 1996.

---

\*See footnote, *ante*, page 35.