Filed 12/30/14  In re V.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re V.S., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.S.,<br><br>        Defendant and Appellant. | A141858<br><br>(Sonoma County<br>Super. Ct. No. 4075-DEP) |

C.S., the mother of V.S., appeals from the orders denying her Welfare and Institutions Code[1] section 388 petition and terminating her parental rights.  She contends that the juvenile court abused its discretion in denying her section 388 petition without affording her an evidentiary hearing.  She also argues that the court's denial of the section 388 petition undermined the constitutionality of the section 366.26 hearing.  We affirm.

## I.  FACTUAL BACKGROUND

On November 16, 2012, the Sonoma County Human Services Department (the Department) filed a section 300 petition alleging that V.S. was at substantial risk of harm because parents have substance abuse problems.[2]  The petition alleged that both V.S. and

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Father has not filed an appeal in this matter.

1

mother tested positive for marijuana at V.S.'s birth. Mother had also tested positive for marijuana about two weeks prior to V.S.'s birth and had used marijuana throughout her pregnancy. The petition further alleged that mother had prior arrests for possession of drug paraphernalia and various controlled substances. She had also suffered a conviction for driving while under the influence of alcohol, and had been arrested several times for driving while under the influence of alcohol or drugs. The court ordered that V.S. be detained. V.S. was suffering from major withdrawals from benzodiazepines and remained in the neonatal intensive care unit at the hospital.

The Department's report for the jurisdiction/disposition hearing stated that V.S. should remain hospitalized to treat symptoms of drug withdrawal. She was suffering from severe opiate withdrawal and was being treated with morphine sulfate and Phenobarbital. She was subsequently placed on methadone. The report stated that mother acknowledged taking Subutex[3] and marijuana during her pregnancy. She admitted being on methadone in February 2011. Mother had a significant criminal history including two misdemeanor convictions and numerous arrests for offenses including possession of a controlled substance and possession of a controlled substance for sale. She also acknowledged taking prescription opiate pain medication and becoming dependent on it as a result of severe back injuries. In addition to Subutex and marijuana, mother reported taking Trazadone, Xanax, and Oxycodone. The Department recommended that V.S. be declared a ward of the court and that reunification services be offered to parents.

On December 12, 2012, parents did not contest jurisdiction. The court sustained the allegations of the petition and ordered reunification services for parents. Mother's reunification plan included the requirements that she be assessed by the Drug Abuse

---

[3] Subutex contains buprenorphine hydrochloride and is approved for the treatment of opiate dependence. (as of December 19, 2014: http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/ucm191523.htm.) While methadone can be dispensed only in a limited number of clinics that specialize in the treatment of addiction, Subutex can be prescribed in a doctor's office. (*Ibid.*)

Alternatives Center (DAAC) and that she comply with all recommendations for treatment, undergo random substance abuse testing, attend at least two 12-step program meetings per week, complete a parent education program, and participate in individual and conjoint counseling.

On March 14, 2013, the court held a three-month status review hearing. The Department reported that parents continued to have substance abuse issues. In particular, mother tested positive on January 28, 2013 for benzodiazepines and marijuana, and missed drug tests on January 23 and February 19, 2013. While she regularly attended supervised visits with V.S., the visiting supervisors noted that mother appeared to be under the influence during the visits, had slurred speech, and appeared to be "somewhat sedated." Her doctor also reported that he had seen mother intoxicated outside his office and that he was no longer prescribing Subutex to her. Mother nonetheless continued to take Subutex without a prescribing doctor, though she claimed she was seeking a doctor to help her to detoxify from the drug. Counsel for V.S. reported to the court that V.S. was continuing to struggle with methadone and was having difficulty sleeping. V.S. was currently placed in a concurrent foster care home. The court urged parents to work towards reunification.

The Department's report for the six-month review hearing recommended that the court order an additional six months of reunification for parents. Mother was unemployed and had recently separated from father. The Department had received a report that parents had been involved in a fight where both had sustained facial injuries but mother denied the incident of domestic violence. Mother continued to use Subutex and was also using Xanax, Wellbutrin, and Vicodin. She was attending weekly therapy although she was late for almost every appointment. She had regularly visited with V.S. and had participated in 15 parent education sessions. She had, however, been inconsistent in one-on-one parent education. Mother was participating in the Early Recovery and Parenting in Recovery groups of DAAC but was late for sessions and at one session appeared to be slurring. Mother had not admitted that she had substance

abuse issues. Her case manager recommended residential treatment. Mother had tested positive for benzodiazepines in March, April, and May 2013.

The Department reported that V.S. had been off methadone since April 11, 2013 and was gaining some weight. She, however, had several developmental delays. The Department considered recommending that parental rights be terminated but recommended additional services in light of mother's participation in services and her consistent visitation.

The contested six-month review hearing was held on August 19, 2013. The Department filed an addendum report recommending that reunification services be terminated. The Department had confirmed that parents had engaged in domestic violence, and that they continued to make poor choices. Father did not attend the hearing as he was in custody. He did not contest the Department's recommendation.

The Department's social worker testified that since the first report was written in May 2013, mother had failed three drug tests. She had tested positive for methamphetamine in July, but denied that she used the drug, claiming that it was a false positive due to Ranitidine. She also continued to abuse prescription medication. Since April, she had gone to the emergency room and urgent care centers to get prescriptions for various narcotic pain relievers. The social worker recommended that reunification services be terminated due to mother's multiple positive drug tests and missed drug tests, the report of domestic violence and mother's deceit about it, and the fact that she was not forthcoming about her substance abuse issues with DAAC. She also expressed concern about instances in which mother appeared to be under the influence of drugs. Finally, she questioned mother's commitment to services given that in almost nine months of services, mother was consistently late to appointments.

Mother testified and admitted she was an addict. She admitted use of marijuana, Vicodin, Subutex, Wellbutrin, and Xanax. She claimed that she had separated from father but had not yet decided whether to divorce him. She had visited father three times since he was incarcerated in June.

4

The court followed the Department's recommendation and terminated services. It found that mother had failed to participate regularly in services and had not made substantive progress. In particular, the court noted that mother had failed to acknowledge the severity of her substance abuse problem and had continued to test positive for controlled substances despite engaging in a number of AA/NA meetings. The court set the matter for a section 366.26 hearing.

The Department's report for the section 366.26 hearing recommended that parental rights be terminated and that the court order a permanent plan of adoption. V.S. was placed in the home of a non-related extended family friend who had cared for V.S. since she was four and a half months old. The caretaker had been identified as the prospective adoptive parent. V.S. had a secure attachment to her caretaker, who was providing a safe, consistent, and nurturing environment for her. V.S. continued to have some developmental delays, but was making progress. Mother had visited with V.S. for three supervised visits, but missed the visit scheduled for November 14, 2013.

On December 5, 2013, the date set for the section 366.26 hearing, mother requested a settlement conference. The court continued the section 366.26 hearing to January 22, 2014.

On January 21, 2014, mother filed a petition pursuant to section 388 requesting either that V.S. be placed in her care on family maintenance or that she be offered additional reunification services. She alleged that she was "clean and sober," had completed several DAAC classes, had attended 12-step sessions about twice a week, and was an active participant in groups. She also asserted that she had completed two parenting classes, had begun a women's recovery group course for victims of domestic violence, had no contact with father, and had continued to see her therapist for weekly counseling and her psychiatrist every other month.

The Department opposed the motion, arguing that mother had not shown a change of circumstances. In particular, the Department noted that although mother claimed to be clean and sober, she had not referenced a sobriety date. Further, while mother stated that she had taken two parenting classes and had begun a women's recovery group course

focusing on domestic violence, she did not commence these activities until over two months after the termination of services. The Department argued that at best, mother's circumstances could only be viewed as changing rather than actual change. In addition, the Department urged that mother could not meet the second requirement for a section 388 petition which requires a showing that the proposed change would be in V.S.'s best interests. The Department noted that V.S. had a secure permanent home where she had lived since March 2013, and that, at 15 months old, she had never resided with mother. The Department recommended that the petition be denied. On January 29, 2014, the court denied the motion.

The section 366.26 hearing was held on March 11, 2014. The Department's social worker testified that V.S. was adoptable and that she was thriving in her current fost-adopt home where she had resided for almost a year. She recommended adoption as the permanent plan for V.S. Parents requested a permanent plan of guardianship.[4] The court followed the Department's recommendation and terminated parental rights.

## II. DISCUSSION

Mother contends that the trial court abused its discretion in denying her section 388 petition without holding an evidentiary hearing.

"Section 388 permits a parent to petition the court on the basis of a change of circumstances or new evidence for a hearing to change, modify or set aside a previous order in the dependency. The parent bears the burden of showing both a change of circumstance exists and that the proposed change is in the child's best interests. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) We may not disturb the decision of the juvenile court absent a clear showing that the court abused its discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

The court is not required to hold an evidentiary hearing on a section 388 petition if the petition fails to make a prima facie showing of changed circumstances and that the proposed change would promote the child's best interests. (*In re Zachary G.* (1999) 77

---

[4] Father appeared at the hearing although he was still incarcerated.

6

Cal.App.4th 799, 806.)  "[S]ection 388 contemplates that a petitioner make a prima facie showing of both elements to trigger an evidentiary hearing on the petition."  (*Ibid.*)  " 'A "prima facie showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petition is credited." ' "  (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 418.)

Mother argues that she established changed circumstances in that she was clean and sober, had attended parenting courses, weekly counseling with her psychotherapist, and DAAC classes.  The trial court found that mother had shown changed circumstances.  Although we might question whether mother's circumstances constituted changed circumstances in that it is unclear when mother began her sobriety and her efforts at significant substance abuse treatment and domestic violence counseling had only recently begun, the trial court accepted that this prong of the section 388 test had been met.  Nonetheless, the record is clear that the court properly found that ordering additional reunification services for mother was not in V.S.'s best interests.  (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 ["after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability"].)

"[I]n considering whether a juvenile court abuses its discretion in denying a section 388 motion, the gravity of the problem leading to the dependency, and the reason that problem was not overcome by the final review, must be taken into account."  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531.)  Here, mother acknowledged her addiction to drugs at the 11th hour, after the section 366.26 hearing had been set.  While she admitted that she was an addict, she gave no date as to when she became sober, and any sobriety could not have commenced until just a few months before the date of her motion.  Given these facts, it is doubtful that mother's circumstances had changed significantly.  (*Id.* at p. 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].)

7

"A second important factor which is inherent in the statutes is the strength of the existing bond between the parent and child . . . ." (*In re Kimberly F., supra,* at p. 531.) Here, mother had never lived with V.S., and while she had visited with her through the reunification period, once reunification services were terminated in August 2013, mother had missed one of four scheduled visits over a three-month period. She failed to demonstrate a strong parental bond with V.S., who had resided with a fost-adopt caregiver since March 13, 2013.

"The third factor, the degree to which the problem may be easily removed and the degree to which it has been" (*In re Kimberly F., supra,* 50 Cal.App.4th at p. 532) militates against mother in this case. Mother's recent quest to address her long-term addiction, while commendable, came too late for reunification. She had not demonstrated a sufficient period of sobriety or stability to warrant a modification of the court's order denying reunification services.

Finally—and critically—mother failed to demonstrate that it would be in V.S.'s best interests to permit additional reunification services. V.S., who was born addicted at birth and spent seven weeks in the intensive care unit and her first five months of life on methadone, needs the stability and permanency her fost-adopt home offers. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents efforts at rehabilitation begun only three months before the section 366.26 hearing insufficient to show "how the best interests of [their children] would be served by depriving them of a permanent, stable home in exchange for an uncertain future"].) V.S. perceives her fost-adopt parent to be her psychological parent. Her need for stability and permanence outweigh mother's interest in reunification. "At the point of these proceedings—on the eve of the section 366.26 permanency planning hearing—the [child's] interest in stability was the court's foremost concern and outweighed any interest in reunification." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 594.) While mother had made some progress in her treatment activities in the few months prior to the section 388 hearing, the court had before it a record of a long-term history of serious substance abuse. Given mother's history, V.S. needs the opportunity she has now for an adoptive home with her prospective adoptive

parent who is providing her with a loving and supportive home.  The court properly denied mother's request for reunification services.[5]

### III.  DISPOSITION

The orders denying mother's section 388 petition and terminating her parental rights are affirmed.

_____

Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.

---

[5] Mother's challenge to the court's order terminating parental rights is based solely on an alleged erroneous denial of her section 388 petition.  Inasmuch as the court's order denying the petition was proper, we affirm the court's order terminating parental rights.